TESCH, Respondent, v. TESCH, Appellant.

*No. 138. Submitted under sec. (Rule) 251.54 March 6, 1974.—*
*Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 647.)

322

The cause was submitted for the appellant on the brief of *Steven I. Cohen* and *Cohen, Grant, Liebmann & Conway, Ltd.*, all of Green Bay, and for the respondent on the brief of *Alvin Richman* of Milwaukee.

WILKIE, J. The four issues raised in this contested divorce case are:

1. Did the trial court err in basing its division of property on the net assets of the parties without taking into consideration the liabilities of the defendant, including the contribution to plaintiff's attorneys' fees and the fee of the guardian *ad litem?*

2. Is a division of the estate which awards one third of the net excessive under all the circumstances?

3. Did the trial court abuse its discretion in ordering the defendant to pay $2,000 plus costs to his wife's attorneys without an advisory hearing?

4. Did the trial court abuse its discretion in ordering the husband to pay the full fee of the guardian *ad litem?*

*Division of the estate.*

The divorce judgment divided the estate of the parties in the following manner:

*The following assets to the plaintiff:*

| | | |
|---|---|---:|
| a. | The homestead at 539 Hazel Street, Oshkosh, Wisconsin, subject to the existing mortgage indebtedness | $8,557.00 |
| b. | The household furniture and furnishings in possession of the plaintiff | 1,020.00 |
| c. | 1963 Oldsmobile station wagon | 550.00 |
| d. | Life insurance equity on policies issued on life of wife, Barbara Tesch | 294.00 |
| e. | Cash award to wife, Barbara Tesch | 4,277.00 |

$14,698.00

The defendant was given the option of paying the cash award over a four-year period in quarterly payments of $267.25 each, with six percent per annum interest on the unpaid balance, to be secured by a lien upon the property at 900 Winnebago Avenue, Oshkosh, Wisconsin, awarded to the defendant.

*The following assets to the defendant:*

| | | |
|---|---|---:|
| a. | All of the interest in Art's Electric, Inc. | $16,500.00 |
| b. | Duplex at 900 Winnebago Avenue, Oshkosh, subject to the mortgage | 14,054.00 |
| c. | Chris-Craft boat, plus improvements, less mortgage | 1,200.00 |
| d. | Household furniture and furnishings in the possession of the defendant | 267.00 |
| e. | Life insurance equity—policies issued on husband's life | 1,602.00 |
| f. | Fourteen-foot boat | 50.00 |
| | | $33,673.00 |
| Less cash award to plaintiff wife | | 4,277.00 |
| | | $29,396.00 |

The defendant was further ordered to pay all of the debts and obligations of the parties owing at the time of the commencement of this action. These debts and obligations were to include, among others, insurance premiums due, attorneys' fees incurred by the defendant, a dentist bill, a bill for improvements on the Hazel Street residence awarded to the wife, the appraisal fee and the 1970 property taxes on both properties. In addition, the defendant was ordered to pay the fee of the guardian *ad litem* and make a $2,000 contribution to the fees of the plaintiff's attorneys and the total disbursements of $207.50. The defendant was to receive credit for $325 previously paid together with $165.35 held in the trust account of the

plaintiff's attorneys for the benefit of the parties which was to be applied on the fees.

This court has indicated that while arrearages under a temporary order for alimony and attorney fees and costs which the husband is required to pay do not constitute part of a wife's division of the estate, they are, nevertheless, a charge against the entire estate and should be deducted either from the gross estate in determining the net estate available for division or from the assets awarded to the husband.[1]

Therefore, we must determine the actual percentage of the net estate awarded to each party and decide whether the percentage awarded to the wife is so excessive under the circumstances as to constitute an abuse of discretion.[2] The plaintiff wife was awarded a total of $14,698. She also had to assume $500 worth of her own attorneys' fees. Thus her net award was $14,198. The husband was awarded $29,396 and obliged to assume all outstanding debts and $2,000 of his wife's attorneys' fees and $207.50 in costs. He had already paid $325 toward such fees and was allowed a credit of $165 which was in the plaintiff's attorneys' trust account. The plaintiff on this appeal does not dispute the accuracy of the defendant-husband's determination of the amount of outstanding indebtedness. This amount as set forth at page 8 of the husband's brief is $4,788. Thus the total liabilities of the husband amounted to $6,505.50 ($4,788 + $2,207.50 — $490). His net award was thus $29,396.00 — $6,505.50, or $22,890.50. The total net estate is $37,088.50. This figure is reached by adding together the net figures of the husband and wife, or adding $165 to the total assets found by the court ($44,094 + $165 = $44,259) and subtracting (1) the outstanding debts of the parties of $4,788,

[1] *Kronforst v. Kronforst* (1963), 21 Wis. 2d 54, 60, 123 N. W. 2d 528; *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 508, 155 N. W. 2d 130.

[2] *Kronforst v. Kronforst, supra,* at page 61.

(2) $1,882.50, which is the husband's balance of the wife's attorneys' fees, and (3) $500, which the wife must assume of her attorneys' fees.

Figured as a percentage of net worth, the wife's award of $14,198 is approximately 38.3 percent. The husband's award of $22,890.50 is therefore equal to approximately 61.7 percent of net worth.

We must determine whether under the circumstances of this case the award of 38.3 percent of the net estate is so excessive as to constitute an abuse of discretion by the trial court. These percentage figures do not reflect the amount of the guardian *ad litem* fee, which the court also ordered the husband to pay. The court had not received a bill from the guardian *ad litem* at the time of the judgment and neither party indicated in his brief what the amount of the eventual bill was. Therefore, these percentage figures probably would shift slightly more toward a 40/60 split of the net estate.

It is apparent from the written decision of the trial court that it was operating under those cases which were decided before the *Lacey v. Lacey* [3] *Case*. The pre-*Lacey* cases spoke of a "rule" that one third was a generous award to a wife and that it would be varied only if extraordinary circumstances called for a greater or lesser award.[4] The *Lacey Case* rejected any strict formula of proper apportionment of property and emphasized that each case must be decided on its own peculiar facts. In the present case the trial court stated:

"The parties were married for a little over fifteen and a half years and had three children. During a period of six to eight years of the marriage the plaintiff Barbara Tesch assisted her husband with respect to remodeling the Winnebago Avenue duplex and also in connection with the operation of the defendant Arthur Tesch's electrical contracting business.

---

[3] (1970), 45 Wis. 2d 378, 173 N. W. 2d 142.

[4] *Kronforst v. Kronforst, supra,* footnote 1, at page 61.

"There was testimony that the defendant was required to pay additional expenses for housekeeping services during the latter part of the marriage due to ill health of the plaintiff.

"The defendant Arthur Tesch counterclaimed against his wife, plaintiff Barbara Tesch, alleging adultery to have been committed on her part, and on a separate jury trial of such issue the jury found said Barbara Tesch guilty of adultery, and, accordingly, an absolute divorce was awarded to the defendant Arthur Tesch, and no alimony is awarded to the plaintiff Barbara Tesch.

"There was testimony which would indicate that the fault for the breakup of this marriage did not entirely rest with the plaintiff, but that the conduct of the defendant also contributed to its final dissolution.

"In view of these factors, the Court finds that the suggested rule of property settlement made by the Wisconsin Supreme Court—that being an award of one-third of the property of the parties to the wife—should not be adjusted either way."

However, the *Lacey Case* stated that: "The responsibility of the trial court is to fairly, equitably and justly divide the marital property between the spouses, and where it begins is not crucial. It is where it ends that is to be reviewed on appeal." [5] Here, although the trial court did not precisely follow or use the *Lacey* guidelines, it did list the factors which it felt made its division of property an equitable result. It is now up to this court to determine whether in fact the division was a proper exercise of discretion.

The defendant husband complains that the trial court did not take into consideration all the factors mentioned by this court in the *Lacey* opinion as factors which are material to the question of property division. Specifically, the defendant points out that the court did not mention the age and health of the parties, the liability of the husband for child support payments, or the employability of

---

[5] *Lacey v. Lacey, supra,* footnote 3, at page 382.

the wife. However, in the next breath the defendant states that he does not read *Lacey* as a "prescription to consider certain factors." He thus recognizes that the question is whether the division can stand the test of fairness and equity.

Of course, it is always possible that a trial court will apparently ignore some important factor which this court will consider justifies some adjustment. However, if this court is to find an actual abuse of discretion by the trial court we would first have to conclude that an award by the trial court, where such a factor is absent, was an abuse of discretion. In this case we do not think that the missing factors mentioned by the defendant would necessitate a shift in the division of the estate. The record shows that both parties are apparently in good health and relatively young (the plaintiff wife approximately thirty-seven and the defendant husband approximately forty-four at the time of the divorce). Therefore, no equity would appear in this respect to favor a greater or lesser award to either party. The husband is required to pay $300 per month in child support, but as the court recognized in its decision denying motions of the defendant husband for a modification of the judgment, custody was awarded to the wife. Thus the wife assumes a burden with regard to the children also which will involve monetary and emotional support. Although the wife was employed at the time of the divorce, she earned a minimal salary when compared to that of her husband. In its findings of fact the trial court found the wife earning $42 gross per week and the husband $850 gross per month. It could well be that the needs of the children would justify the plaintiff in not seeking any outside employment. Because the wife can earn some sum does not justify a conclusion that the wife is self-supporting and not in a relatively weak financial position vis-a-vis her husband.

However, the main complaint of the defendant is that the trial court did not give enough weight to the fact that a jury found the plaintiff-wife guilty of adultery. The defendant, in his brief, feels that giving this factor the weight it deserves would lead to the conclusion that in this case any award greater than 25 percent is excessive and an abuse of discretion. In connection with this point, the defendant also claims that the trial court's consideration of misconduct on his part as a factor in the property division is reversible error under the facts of this case. We disagree. It is true that after the jury finding of commission of adultery, the plaintiff-wife withdrew her complaint of cruel and inhuman treatment. However, it is clear it was withdrawn on the understanding that the defendant-husband would continue to prosecute his counterclaim to judgment. Therefore, it is true that there was no trial and findings on the issue of cruel and inhuman treatment. However, the court's statement that the husband was not faultless was not based on the wild, unproven charges of the wife. On cross-examination before the court and jury the defendant-husband admitted that he struck his wife during arguments on a number of occasions. These resorts to physical violence began before the couple moved to their Hazel Street residence and long before the plaintiff met the man with whom the jury decided that adultery was committed. On one occasion shortly before the plaintiff instituted proceedings against her husband for separation, an exchange between the parties ended in "fisticuffs" as the defendant described it. The police were called and they suggested that the defendant spend the evening elsewhere. Thus the defendant wishes the court to be precluded from considering his own admissions under oath of conduct which is relevant to the equities between the parties.

This court has often stated that while wrongful conduct by either party is a factor to be considered, it is not to be

utilized as a means of punishment to the guilty party.[6] As pointed out by the trial court in its decision on motions by the defendant, alimony has already been denied because of the finding of adultery.

In the instant case we have a relatively long marriage which produced three children. The record also shows that in the early years of the marriage the wife helped to remodel one home into two apartments. They lived in one of the apartments for several years before moving to a larger home. The wife actually did some rather heavy manual labor on this project. Also during these first years her husband began his electrical contracting business and worked out of their home. The plaintiff answered the phone to take business calls and worked on the books at night. This continued for several years while the plaintiff was still involved in raising their young children. The plaintiff did begin to get household help during this period but it did not become a daily occurrence until after they moved to a larger home and Arthur opened a separate business office. Given the added factors of the relatively small earning power of the wife and her custody of the three minor daughters and the defendant's not completely exemplary conduct during the duration of the marriage, it would not seem that the trial court gave excessive consideration to the wife in this property division as contended by the husband. As the plaintiff points out in her brief this court stated in *Wagner v. Wagner:*[7]

"We may say that upon this record we would not have given Mrs. Wagner as favorable consideration as did the learned municipal court. We think that the husband's conjugal and financial trust in his wife has been ill-

[6] *Kronforst v. Kronforst, supra,* footnote 1, at page 62; *Spheeris v. Spheeris, supra,* footnote 1, at page 510; *Knutson v. Knutson* (1961), 15 Wis. 2d 115, 121, 111 N. W. 2d 905.

[7] (1961), 14 Wis. 2d 23, 30, 109 N. W. 2d 507.

rewarded but, while we cannot greet the trial court's division with cheers, we recognize that discretion in the division of property lies in the trial court and its judgment must prevail unless there is a clear abuse of its discretion. We can and do sustain that court's property division as within the bounds of its discretion, for one third of the assets on hand which were not derived from the wife, and all of the assets which were derived from her."

The plaintiff also points out two other decisions of this court which upheld a 50 percent [8] property award and a 35 percent [9] property division where the wife was the offending party. Therefore, although the court may understand the feelings of the husband in this case, it cannot conclude that the trial court has gone beyond the bounds of its discretion in awarding approximately 39 percent of the net worth of the parties to the wife in this case.

### Attorneys' fees.

The defendant-husband has two objections to the awarding of attorneys' fees in this case: (1) The division of responsibility for these fees and (2) the manner in which the fees were imposed.

On the second objection, the defendant feels he has been denied due process of law because at the time testimony was taken on the valuation of assets and liabilities the plaintiff's counsel did not offer evidence on the amount of his claimed fees. The plaintiff's counsel, according to the trial court's written decision and its rulings on motions after verdict, submitted to the court an itemized bill. The defendant asserts that due process required that he be given the opportunity to cross-examine plaintiff's counsel and to present evidence on the reasonableness of this fee. He feels that the *"ex parte"* consideration

---

[8] *Julien v. Julien* (1953), 265 Wis. 85, 60 N. W. 2d 753.

[9] *Lerner v. Lerner* (1948), 252 Wis. 87, 31 N. W. 2d 208.

of the claim by the trial court was a denial of due process of law.

In *Boddie v. Connecticut*,[10] the United States Supreme Court recently discussed that court's formulation of the requirements of due process. The United States Supreme Court in speaking of the words of the due process clause said:

"... 'there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' [*Mullane v. Central Hanover Tr. Co.*, (1950), 339 U. S. 306, 313, 70 Sup. Ct. 652, 94 L. Ed. 865].

"... In short, 'within the limits of practicability,' *id.*, at 318, a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause."

In this particular case the record shows that notice was given that an award of attorneys' fees was being considered. After the final day of testimony the court said:

"It is late in the day, and I don't want to try to go through them today and make a hasty property settlement, so I will take the question of property settlement and attorney fees under advisement, and ask that you each, if you would, submit something in writing:— ... ."

Thus counsel for defendant had an opportunity to make written recommendations to the court concerning any award of attorneys' fees to the wife. This court has indicated that the question of attorneys' fees is within the discretion of the trial court.[11] This court has also dis-

---

[10] (1971), 401 U. S. 371, 378, 379, 91 Sup. Ct. 780, 28 L. Ed. 2d 113.

[11] *O'Connor v. O'Connor* (1970), 48 Wis. 2d 535, 180 N. W. 2d 735; *Schipper v. Schipper* (1970), 46 Wis. 2d 303, 174 N. W. 2d 474; *Spheeris v. Spheeris, supra*, footnote 1.

cussed the peculiar nature of findings on attorneys' fees in *Hennen v. Hennen*.[12]

". . . This court has stated that a trial court's determination of the value of attorney's fees will be sustained unless clearly unreasonable and against the great weight and clear preponderance of the evidence. *Knoll v. Klatt* (1969), 43 Wis. 2d 265, 271, 168 N. W. 2d 555. However, in *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. 2d 479, 488, 111 N. W. 2d 419, it was held that a trial court's determination of the value of legal services constituted an exception to the general rule that a trial court's findings will not be disturbed on appeal unless contrary to the 'great weight-and-clear-preponderance' test because the expertise necessary for such a determination is shared alike by the members of this court with trial courts."

We can find no Wisconsin cases which discuss the question of how a request for allowance of fees to the wife in a divorce case should be presented. In the *Hennen v. Hennen Case*,[13] testimony was presented in the trial court on the issue of fees. In the *Spheeris v. Spheeris Case*[14] the attorney apparently submitted a bill to the court. And in *Schipper v. Schipper*[15] the attorney apparently submitted an affidavit which was made part of the record. We deem it the better practice to have each attorney present evidence on his fees at the time testimony is taken on the value of assets and the amount of liabilities affecting the marital estate, or if a bill is submitted to the court, that a copy be submitted to opposing counsel so that comments may be made thereon. However, the absence of such procedures here was not such as to be a denial of due process of law. The *Hennen v. Hennen Case* referred to above pointed out the special nature of attorney-fee determinations. The judge has been aware of the amount of time consumed by the trial and the nature and com-

[12] (1972), 53 Wis. 2d 600, 606, 193 N. W. 2d 717.
[13] *Supra*, footnote 12, at page 605.
[14] *Supra*, footnote 1.
[15] *Supra*, footnote 11, at pages 313, 314.

plexity of the issues involved. He has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception. He has the expertise to evaluate the reasonableness of the fees with regard to the services rendered. It is not really the type of issue or question of fact where an adversary presentation is necessary to the presentation of evidence necessary to a determination. And, as pointed out by the plaintiff, the *Hennen v. Hennen Case* allows the supreme court on review to make an independent determination of the reasonableness of attorneys' fees. Thus, there would be a full opportunity for hearing a party's objections on appeal. It cannot be said here that "an opportunity for hearing appropriate to the nature of the case" has been denied. We are satisfied that an attorney's fee of $2,500 in this divorce action involving three full trial days and in which, in addition to the grounds of divorce, custody and the property division were also contested, is reasonable.

The next question is the actual determination of how much the husband should contribute. The trial court ordered the husband to contribute $2,000 toward the wife's attorney fees of $2,500. In *Hirth v. Hirth* [16] this court said:

". . . The test as to whether any such contribution can be ordered, and in what amount, is exactly the same as for alimony payments: (1) The need of the wife, and (2) the ability to pay of the husband. In Wisconsin, it is when, and only when, the needs of the wife require and the ability to pay of the husband permits that a husband may be required to contribute to the cost of legal services performed on behalf of his wife. *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282. . . . Where the wife is able to pay her own attorney out of income or assets, or where the husband does not have the ability to pay such contribution, there is no basis in law or in equity for requiring a husband to contribute towards payment of a fee owed by his wife to her counsel."

[16] (1970), 48 Wis. 2d 491, 497, 180 N. W. 2d 601.

The court in its findings of fact specifically found that the plaintiff was "without a separate estate or income sufficient to support the minor children of the parties or to pay the substantial attorneys' fees required for the prosecution of this action and the defense of the claims made against her by the defendant." The court did not make a separate specific finding that the defendant had the ability to make a contribution. However, the record and the findings of fact sufficiently demonstrate that he does have that ability. The record demonstrates that the trial court did consider the defendant's ability to pay even though there is no specific finding on that point. In a letter to defendant's counsel, the trial court in reference to its order as to guardian *ad litem* fees stated: ". . . after a review of the file, the financial circumstances of the parties, and the final determination of the custody of the children, it is the Court's opinion that Mr. Tesch should pay the Guardian ad Litem fees."

*Hirth v. Hirth* sets out factors to be considered in determining the need of the wife and the ability to pay of the husband.[17] The court may properly consider the assets owned by the wife, the income of the wife, the wife's age and health, the length of the marriage, and the station in life of the wife. Here the wife had no separate estate. Her earning capacity was minimal and the fact that she had custody of the children would influence the desirability of seeking full-time employment.

On the question of ability of the husband to make a contribution, the court may consider the assets of the husband, his income, his debts, his age and health and the presence of children. The record here demonstrates that the husband was the owner and principal operator of a business which afforded a gross salary of $850 per month. He was in good health. The record reveals that including the contribution toward attorney fees he would

---

[17] *Id.* at pages 493–496.

have indebtedness of approximately $6,000 and that he was obligated to pay $300 per month in child support.

The husband feels that because a cash award was made as part of the property division this clearly demonstrates plaintiff's ability to pay. However, requiring her to use this cash would reduce her property award below what the court had determined was fair and equitable. The court had already given the husband the option of paying the cash award in installments over a period of years reflecting the trial court's consideration of the defendant's financial position. To have required the use of this cash award would have left the wife with practically no income with which to maintain a home for herself and the three children.

The husband also feels that the fact that part of this fee was in defense of a charge of adultery should dictate a lesser contribution on the part of a husband. As pointed out by the defendant this court has approved a trial court's consideration of the source of fees in its decision on contribution. In *Manske v. Manske*,[18] this court found no abuse of discretion in disallowance of any award of attorney's fees to a wife because they were "fees which she incurred in large part by commencing the action which the court deemed without merit and by interposing a defense which the court also deemed without merit." And in *Martin v. Martin*,[19] this court sustained a substantial award because "the plaintiff-wife was put to a considerable portion of her attorney's fees liability because of the nature in which defendant pursued the litigation." However, this court has never said this is a factor which a trial court *should* consider in every case and the court in this case did not find that the plaintiff's commencement of an action or the defense of her husband's counterclaim was without merit. In fact the trial court

[18] (1959), 6 Wis. 2d 605, 611, 95 N. W. 2d 401.
[19] (1970), 46 Wis. 2d 218, 229, 174 N. W. 2d 468.

carefully considered a motion to dismiss the counterclaim for insufficiency of the evidence. As was pointed out by the trial court, this was a bitterly contested divorce by both parties. The trial court in its written decision mentioned that the defendant Arthur Tesch had employed the services of five different attorneys at various times and in its oral decision on motions by the defendant pointed out that this action involved many items other than the grounds for divorce and much time other than that devoted to the trial of that issue. The trial court obviously determined in the exercise of its discretion that this factor did not impel a deviation from the usual tests for contribution—the need of the wife and the ability of the husband. We again are satisfied that the record reveals no abuse of discretion in determining the portion of the wife's attorneys' fees to be paid by the husband.

### *Fee of guardian ad litem.*

At the time of the hearing on the motions for modification in the judgment, the trial court was informed that the guardian *ad litem* requested an allowance of his fee. Neither the record, the briefs of counsel, nor the trial court's decisions indicates the amount of that request. The trial court did conclude that the entire guardian *ad litem* fee should be paid by the defendant husband. It had found:

"12. That the plaintiff is without a separate estate or income sufficient to support the minor children of the parties or to pay the substantial attorneys' fees required for the prosecution of this action and the defense of the claims made against her by the defendant."

We are not satisfied that the trial court made a specific enough finding about the absence of an ability to pay on the part of the plaintiff wife so as to excuse her entirely from contributing to the cost of the guardian *ad litem.*

This court has repeatedly recommended the appointment of a guardian *ad litem* in appropriate cases, such as here. The services of a guardian *ad litem* are to protect the interests of the children. Both of the parents are concerned that these interests be protected and that is the reason this court, in *Lacey v. Lacey,* stated that where both spouses have ability to pay each should be required to contribute to the cost of the guardian *ad litem,* with the percentage to be paid by each parent left to the discretion of the trial court. In that case 50 percent of the fee was assessed against each parent. Under the property division ordered here, and in view of the obvious mutual interest of the parents in protecting the interests of their children, we are convinced that the wife had sufficient ability to pay a part of the guardian *ad litem* fee so that there was an abuse of discretion on the part of the trial court in failing to order her to pay any part of the guardian *ad litem's* undisclosed fee. We think it entirely appropriate that, under the circumstances, the plaintiff wife should be ordered to pay 50 percent of that fee, and the judgment appealed from is amended in that particular.

*By the Court.*—Judgment modified in accordance with this opinion and, as modified, affirmed. Costs to respondent.