In re the Marriage of: Michelle Elizabeth Bernier
n/k/a Michelle Elizabeth Vangelos,
Petitioner-Respondent,

v.

Michel Carey Bernier,
Respondent-Appellant.

Court of Appeals

*No. 2004AP625. Submitted on briefs October 14, 2004.
—Decided December 15, 2005.*

2006 WI App 2

(Also reported in 709 N.W.2d 453.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Laurie Roman* of *Haus, Roman and Banks, LLP*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Daphne Webb* and *Margit Sandor Kelley* of *Stafford Rosenbaum LLP*, Madison.

Before Dykman, Deininger and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This appeal arises from a circuit court judgment and order dividing equally the guardian ad litem fees and awarding attorney fees in a physical placement enforcement action brought under WIS. STAT. § 767.242 (2003–04).[1] Michel Carey Bernier argues the circuit court erred by ordering him to pay fifty percent of the guardian ad litem fees. He claims that, as the prevailing party, he is entitled to recover his share of the guardian ad litem fees as part of "the cost of maintaining an action" under § 767.242(5)(b)1.b.[2] Bernier further asserts the circuit court erroneously exercised its discretion when it

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Section 767.242(5) reads, in relevant part,

> (5) HEARING; REMEDIES. (a) A judge or circuit court commissioner shall hold a hearing on the petition no later than 30 days after the petition has been served, unless the time is extended by mutual agreement of the parties or upon the motion of a guardian

awarded him less than half the attorney fees he incurred in successfully vindicating his rights under § 767.242.

¶ 2. Because we conclude the clear intent of Wis. Stat. § 767.242(5)(b)1.b. is to make whole prevailing parties seeking judicial enforcement of their physical placement rights and to provide a financial disincentive to custodial parents who interfere with the custodial rights of the other parent, we conclude the circuit court erred by requiring Bernier to pay fifty percent of the guardian ad litem fees. We further conclude the circuit court erroneously exercised its discretion by failing to sufficiently explain the basis for the amount of attorney fees awarded to Bernier. We do conclude, however, that the circuit court properly excluded attorney fees for the seventeen hours spent negotiating a settlement to this case. We therefore affirm in part, reverse in part, and remand for a hearing on the allocation of the guardian ad litem fees, an award of guardian ad litem fees to

ad litem and the approval of the judge or circuit court commissioner. The judge or circuit court commissioner may, on his or her own motion or the motion of any party, order that a guardian ad litem be appointed for the child prior to the hearing.

(b) If, at the conclusion of the hearing, the judge or circuit court commissioner finds that the respondent has intentionally and unreasonably denied the petitioner one or more periods of physical placement or that the respondent has intentionally and unreasonably interfered with one or more of the petitioner's periods of physical placement, the court or circuit court commissioner:

1. Shall do all of the following:

a. Issue an order granting additional periods of physical placement to replace those denied or interfered with.

b. Award the petitioner a reasonable amount for the cost of maintaining an action under this section and for attorney fees.

748

Bernier, and a determination as to the reasonableness of the attorney fees award in light of this decision.

## FACTS

¶ 3. Michelle Vangelos (f/k/a Michelle Bernier) and Bernier were divorced on August 3, 2000. The judgment of divorce incorporated a Partial Marital Settlement Agreement providing that Vangelos could remove the parties' two children from Wisconsin to reside with her in California. The Partial Marital Settlement Agreement also, among other child-related provisions, sets forth Bernier's periods of physical placement.

¶ 4. In March 2003, Vangelos informed Bernier she would not be sending their son for the Easter 2003 placement and she was placing limitations on their daughter's placement with him during the same time period. Bernier sought and obtained an Injunction and Ex Parte Order in which the circuit court found

> there is substantial cause for concern that [Vangelos] will violate the terms of the Judgment of Divorce by denying and/or interfering with [Bernier's] physical placement rights relating to the 2003 Easter school vacation . . . .

The circuit court ordered placement over the 2003 Easter school vacation to occur as provided in the Partial Marital Settlement Agreement. The circuit court deferred Bernier's request for reasonable attorney fees and expenses incurred until after the hearing on his motions for Enforcement of Physical Placement Order and for Contempt.

¶ 5. In these two motions, Bernier alleged Vangelos had denied or interfered with his periods of physical placement on numerous occasions. He also alleged

Vangelos had interfered with his legal custody rights by unilaterally implementing a de facto change in the children's last names from "Bernier" to "Vangelos" on their school records and on purchased airline tickets.

¶ 6. Following a hearing on Bernier's motions, the circuit court found that Vangelos unreasonably denied and interfered with Bernier's court-ordered physical placement rights and unreasonably interfered with his rights by the de facto change of the children's last names. The court ordered Vangelos to stop using the name "Vangelos" for the children and to change all records back to Bernier, correctly identifying him as the children's legal father. The court also awarded Bernier four make-up days and payment of $3,540 for expenses owed by Vangelos.

¶ 7. The circuit court further found that any relief available under WIS. STAT. § 767.242 would be ineffective in obtaining Vangelos's compliance with the court's orders and therefore issued a two-year injunction against her. The court awarded Bernier attorney fees and costs of $11,700, which was less than the actual attorney fees ($26,921.86) incurred by him in this action. The circuit court also ordered the parties to equally share the guardian ad litem's fees. Bernier appeals the circuit court's orders on the attorney fees and guardian ad litem fees.

## DISCUSSION

*Standard of Review*

¶ 8. The first issue is whether a circuit court is required to award guardian ad litem fees to a prevailing petitioner in a WIS. STAT. § 767.242 physical placement

enforcement proceeding as part of "the cost of maintaining an action under this section . . . ." Section 767.242(5)(b)1.b. This question involves the interpretation of three statutes: § 767.242(5)(b)1.b., Wis. Stat. § 814.04(2), setting forth disbursements as items of costs, and Wis. Stat. § 767.045(6), addressing compensation for guardians ad litem. Statutory interpretation is a question of law we review de novo. *Van Erden v. Sobczak,* 2004 WI App 40, ¶ 11, 271 Wis. 2d 163, 677 N.W.2d 718, *review denied,* 2004 WI 114, 273 Wis. 2d 655, 684 N.W.2d 136 (No. 2002AP1595).

¶ 9. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. In construing a statute we are to give deference to the policy choices made by the legislature in enacting the law. *Id.* To that end, if the statutory language is plain and unambiguous, we apply the statute by giving it its usual and common meaning. *Id.,* ¶ 45. We are to interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46.

*Awarding Guardian Ad Litem Fees Under Wis. Stat. § 767.242(5)(b)1.b.*

¶ 10. Bernier argues the circuit court erred when it ordered him to pay one-half the guardian ad litem fees. He asserts the guardian ad litem fees are part of

his cost of maintaining the enforcement action or, in the alternative, reasonable attorney fees recoverable under WIS. STAT. § 767.242(5)(b)1.b. In either case, Bernier contends § 767.242(5)(b)1.b. is a mandatory cost and fee-shifting statute and therefore the circuit court was required to award him, from Vangelos, any guardian ad litem fees it allocated to him.

¶ 11. WISCONSIN STAT. § 767.242, entitled "Enforcement of physical placement orders," was created by 1999 Wis. Act 9, § 3054de. In creating § 767.242, the legislature attempted to address the well-documented problem of parties violating physical placement orders and the legal system's seeming inability to enforce these orders. Christopher D. Walther, *Wisconsin's Custody, Placement, and Paternity Reform Legislation,* WIS. LAWYER, Apr. 2000, at 15, 49. Section 767.242 attempts to ameliorate these problems by establishing new physical placement enforcement mechanisms in family court. Walther, *supra* ¶ 11, at 49. Under § 767.242, a parent who has been awarded periods of physical placement pursuant to WIS. STAT. § 767.24 and has had one or more periods of physical placement denied or substantially interfered with by the other parent can petition the circuit court for a remedy or any combination of remedies set forth in § 767.242(5)(b).

¶ 12. WISCONSIN STAT. § 767.242(5)(b)1.b. is a fee-shifting statute. Fee-shifting statutes such as this one "contemplate that those recovering under them will be made whole." *Chmill v. Friendly Ford-Mercury of Janesville, Inc.,* 154 Wis. 2d 407, 413 n.2, 453 N.W.2d 197 (Ct. App. 1990). Bernier asserts that because § 767.242(5)(b)1.b. is a fee-shifting statute, the legislature intended to make petitioners "whole" not only by requiring the circuit court to impose the other remedies

in the statute but also by awarding prevailing petitioners their cost of maintaining the action plus attorney fees which, in his view, includes guardian ad litem fees. He asserts that if he is not "made whole," the purpose underlying § 767.242 of vindicating parents whose physical placement rights have been interfered with will be undermined.

¶ 13. Vangelos counters that if the legislature intended to include guardian ad litem fees as part of the remedies contemplated under WIS. STAT. § 767.242(5)(b)1.b., it could have expressly done so. The fact that this statute does not expressly provide for the award of guardian ad litem fees, Vangelos asserts, supports the only reasonable inference that the legislature did not intend to make guardian ad litem fees subject to the statute. We agree with Bernier.

¶ 14. We first note that to effectuate the purpose of WIS. STAT. § 767.242, which is remedial in scope and purpose, the statute must be liberally construed. In that light we consider the text of § 767.242(5)(b)1.b. to determine whether the legislature intended to award successful petitioners under this statute the reasonable cost incurred in enforcing their physical placement rights.

¶ 15. WISCONSIN STAT. § 767.242(5)(b)1.b. provides that a circuit court shall "[a]ward the petitioner a reasonable amount for the cost of maintaining an action under this section and for attorney fees." Vangelos construes the language "the cost of maintaining an action" as referring to costs taxable under WIS. STAT. § 814.04(2). Vangelos asserts that § 814.04(2) expressly excludes guardian ad litem fees as part of the definition of costs under that statute and therefore guardian ad litem fees are not taxable. We agree with Vangelos that guardian ad litem fees are not recoverable as costs under § 814.04(2),

but that is not the point. We believe, given the remedial and fee-shifting nature of § 767.242(5)(b)1.b., that the legislature intended a broader reading of the word "cost" under § 767.242(5)(b)1.b. than is urged by Vangelos.

¶ 16. Fee-shifting statutes reflect the legislative bodies' intent to provide relief for prevailing plaintiffs or, as in this case, petitioners, to encourage them to vindicate the rights established by the particular statute involved. The purpose of Wis. Stat. § 767.242(5)(b)1.b. is to provide a financial disincentive to custodial parents who interfere with the physical placement rights of the non-custodial parent and to enable and encourage the aggrieved parent to seek enforcement assistance by the court system. Vangelos's interpretation of § 767.242(5)(b)1.b. as it relates to awarding guardian ad litem fees would be contrary to the legislature's intent to provide a more robust mechanism to enforce a parent's physical placement rights. By not awarding guardian ad litem fees to a successful party in a § 767.242 proceeding, that parent would be required to shoulder part of the cost to vindicate his or her physical placement rights. In short, rather than creating an incentive to parents to exercise their physical placement rights, a wronged parent would be put in the position of footing a portion of the bill for enforcing those rights. This result is inapposite to the whole notion of creating fee-shifting statutes.

¶ 17. Accordingly, we conclude a successful party in a Wis. Stat. § 767.242 proceeding is entitled to recover the guardian ad litem fees attributable to him or her as part of the "cost of maintaining an action" under § 767.242(5)(b)1.b. This reading of the statute insures that the full cost of enforcing physical placement rights falls on the interfering parent, not on the aggrieved parent.

754

¶ 18. Vangelos argues the legislature has already created a specific statute governing the award of guardian ad litem fees under Wis. Stat. § 767.045(6), which, in her view, trumps the more general provision of the fee-shifting statute of Wis. Stat. § 767.242(5)(b)1.b. She also points to the tradition of allocating guardian ad litem fees from the determination of an attorney fees award as evidence that § 767.242(5)(b)1.b. does not refer to guardian ad litem fees in its mandate that the circuit court "[a]ward the petitioner a reasonable amount . . . for attorney fees."

¶ 19. Wisconsin Stat. § 767.045(6) is part of § 767.045, entitled "Guardian ad litem for minor children." Section 767.045(6) specifically governs the compensation of guardian ad litems in actions affecting the family. This statute grants the circuit court the discretion to allocate the guardian ad litem fees between the parties and provides, in relevant part, "[t]he court shall order either or both parties to pay all or any part of the compensation of the guardian ad litem." In short, § 767.045(6) is the "go to" statute for determining how guardians ad litem are compensated in family matters.

¶ 20. Bernier contends his reading of Wis. Stat. § 767.242(5)(b)1.b., as we have adopted here, can be harmonized with the court's discretionary authority under Wis. Stat. § 767.045(6) in allocating guardian ad litem fees. We agree. The court's discretionary authority in allocating guardian ad litem fees under § 767.045(6) is not affected by the requirement under § 767.242(5)(b)1.b. that a prevailing party be awarded his or her guardian ad litem fees as part of the statute's broad remedial package. The circuit court would simply be required to apply its discretionary authority in allocating guardian ad litem fees within the context of the fee-shifting mechanism under § 767.242(5)(b)1.b.

755

¶ 21. The result of our analysis is that, pursuant to WIS. STAT. § 767.045(6), a circuit court may allocate guardian ad litem fees between the parties when it makes a finding that a respondent has intentionally and unreasonably denied physical placement or interfered with the petitioner's periods of physical placement. But when it makes one or both of those findings, the court must then award the petitioner whatever amount it has allocated to the petitioner. The circuit court did not do so here. We therefore remand to permit the circuit court to reconsider its order allocating the guardian ad litem fees and if it allocates any of those fees to Bernier, to then award to Bernier from Vangelos the amount allocated to Bernier.

¶ 22. We recognize this procedure may prove cumbersome in some cases but it preserves the legislative intent behind both WIS. STAT. §§ 767.045(6) and 767.242(5)(b). Admittedly, this procedure may burden a wronged petitioner where a respondent will not pay ordered guardian ad litem fees. In that instance a contempt order may issue, protecting the wronged parent to the greatest extent possible under the circumstances. However, this approach assists in protecting, where possible, fees a guardian ad litem reasonably expects will be paid.

*Reasonable Attorney Fees Under WIS. STAT. § 767.242(5)(b)1.b.*

¶ 23. While an award of attorney fees is mandatory under WIS. STAT. § 767.242(5)(b)1.b., once the petitioner prevails, our review of a circuit court's determination of an attorney fees award is limited to an

erroneous exercise of discretion. *Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204, 496 N.W.2d 57 (1993).

> [T]he supreme court [has] recognized that the trial court is in an advantageous position to decide the reasonableness of requested attorney's fees. It is the trial court that observes the quality of legal services rendered, it is aware of the costs incurred in operating a law practice, and it knows or can readily find out the going rate for legal services in the community. Accordingly, we will give deference to the trial court's exercise of discretion.

*Aspen Servs., Inc. v. IT Corp.*, 220 Wis. 2d 491, 495, 583 N.W.2d 849 (Ct. App. 1998) (footnote and citations omitted). A circuit court properly exercises its discretion if it examined the relevant facts, applied the proper standard of law and, using a demonstrated rational process, reached a reasonable conclusion. *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737. This deferential standard of review acknowledges the circuit court's advantageous position in determining the reasonableness of a firm's rate and preparations. *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 575, 597 N.W.2d 744 (1999).

¶ 24. Bernier prevailed in this physical placement enforcement action and therefore was entitled to his reasonable attorney fees and his cost in bringing this action under the fee-shifting provisions of Wis. Stat. § 767.242(5)(b)1.b. He sought attorney fees and costs in the amount of $26,921.86. The circuit court reduced Bernier's attorney fees request to $11,700. Bernier challenges this award.

¶ 25. The circuit court explained its decision to reduce the fees for which Vangelos was required to reimburse Bernier by noting:

The Court finds that [Bernier's attorney's] method of billing and hourly rate are reasonable and consistent with local practice. However, the amount of time spent is out of proportion to the complexity of the case and the matters at issue. [Bernier] prevailed on his motion, but this action was at base a conventional post-divorce placement dispute which ballooned out of control. If this case had required expert testimony, psychological evaluations or other outside expertise, extensive discovery and trial preparation may have been justified. The hearing on July 25, 2003, however, took six hours and only two witnesses testified; Michelle and Carey. This Court cannot find reasonable nearly one hundred hours of discovery and preparation for the July 25th motion hearing.

¶ 26. From our review of the voluminous record, we agree this was not a complex case in terms of the issues. We also agree that the dispute certainly ballooned out of control, although we disagree with the circuit court's characterization as this case being simply a "post-divorce placement dispute" that went out of control. This case presents facts the legislature intended to address by creating Wis. Stat. § 767.242 and its associated remedies. But the question remains: Why did the dispute balloon out of control? An obvious answer is that Vangelos, by replying to Bernier's interrogatories by overly clever answers or by failing to tell the truth, caused Bernier's attorney to spend time seeking information that Vangelos could have made available early on.

¶ 27. For instance, Vangelos affirmatively alleged that her children with Bernier were registered under the last names of "Bernier" and "Vangelos." The records of the Ambuehl Elementary School, which Bernier eventually discovered, show Bernier's daughter registered as "Brittany Vangelos," with parents indicated as

"Christopher/Michelle V" and her father's work phone listed with a 949 area code, an area code found in California, not Wisconsin. Vangelos also denied she changed the last names of either of Bernier's children. While that appears to be true in the sense that she had not petitioned a court to change the children's last name, it was untrue because exhibit 26, the Blue Cross of California letter, showed the family as Chris, Michelle, Michel, Brittany, and Eliana Vangelos. We need not use further examples of this sort of problem.

¶ 28. Other issues require a more intensive analysis. For instance, exhibit 35 is Bernier's motion for an ex parte injunction and order, which alleges that Vangelos refused to send one of the parties' children during Easter vacation, contrary to the Partial Marital Settlement Agreement. If true, or if Vangelos's reasons for refusing are based on an unreasonable interpretation of the agreement leading to the court's finding of unreasonable denial and interference, Vangelos should pay Bernier's fees for bringing the motion. The circuit court's findings in its August 18, 2003 order will be helpful in determining whether this and other issues ballooned out of control because Vangelos made resolution of the issues more time consuming due to her actions.

¶ 29. There are other possibilities for the dispute ballooning out of control. Paragraphs 25 and 34 of Bernier's attorney's affidavit requesting fees suggest Vangelos's attorneys' lack of cooperation necessitated increased discovery. It is of no matter whether Vangelos or her attorneys were responsible for the need for more discovery. Either way, if the affidavit is accurate, Vangelos is responsible for the fees incurred in discovering a correct rendition of the facts.

¶ 30. Conversely, it is possible that Bernier's attorney over-tried the case or "ran the meter." The circuit court may have been addressing this issue by noting: "However, the amount of time spent is out of proportion to the complexity of the case and the matters at issue." But this does not answer the real question. Why did Bernier's attorney spend the time she spent on the case? Was it because Vangelos and perhaps her attorneys were attempting to impede discovery? Or could Bernier's attorney have adequately tried the case with less discovery? If so, which actions and what hours did she spend that were unnecessary? Was it necessary to raise other issues? An exercise of discretion answers the question: "Why did an uncomplicated case balloon out of control?"

¶ 31. We conclude, therefore, that we must remand to permit the circuit court to address the issues and questions we have posed, and to explain why and in what amount it orders Vangelos to pay an amount of attorney fees to Bernier's attorney. The circuit court may likely be required to take further evidence to resolve the issues we have identified.

¶ 32. Bernier next argues the circuit court improperly disallowed the seventeen hours devoted to negotiating a settlement with Vangelos because the settlement involved an amendment to an existing judgment. In disallowing the request, the court explained "[s]ubsection (5)(d) of [WIS. STAT. § 767.242] prohibits the court from modifying the underlying custody or placement order except as specifically authorized. Any time devoted to that endeavor is not chargeable under the fee-shifting provisions of § 767.242." We agree with the circuit court that, in general, a party cannot obtain a modification to the physical placement order as part of a

§ 767.242 enforcement action. However, the circuit court, in the course of analyzing the statute, did not consider its full scope. While recognizing the statute provided exceptions to the rule prohibiting the court from modifying the underlying custody or placement order, the court failed to examine those exceptions to determine whether they applied to the facts of this case. We briefly discuss the exceptions and apply them to the facts of record.

¶ 33. As the circuit court explained, Wis. Stat. § 767.242(5)(d) prohibits it from modifying the underlying custody or physical placement order, except as provided in § 767.242(5)(b)1.a. and 2.a. Bernier asserts § 767.242(5)(b)2.a. applies to the facts here; thus, we will only address the applicability of that statute. Section 767.242(5)(b)2.a. states that a court may, "[i]f the underlying order or judgment relating to periods of physical placement does not provide for specific times for the exercise of periods of physical placement, issue an order specifying the times for the exercise of periods of physical placement." Thus, according to the plain language of § 767.242(5)(b)2.a., when read in conjunction with § 767.242(5)(d), while the general rule is that a circuit court is prohibited from modifying the underlying custody or physical placement order, the court may do so if the underlying order "does not provide for specific times" for exercising physical placement. Thus, the dispositive question is, did the settlement negotiations for which Bernier seeks recovery of his attorney's fees involve amending the underlying physical placement judgment and order to provide "for specific times for the exercise of periods of physical placement"? *See* § 767.242(5)(b)2.a.

¶ 34. Bernier claims settlement negotiations did address specific times for when he could exercise physi-

cal placement, which was not specified in the underlying physical placement order adopting the partial marital settlement agreement. However, Bernier points to no evidence of record indicating the nature of the subjects discussed during the seventeen hours of settlement negotiations the circuit court disallowed, except for two examples: the end of Easter placement and "what portion of Mr. Bernier's placement was to be considered a travel day . . . ." Moreover, our independent review of the record has not unearthed any evidence of the issues being negotiated.

¶ 35. Consequently, we cannot determine whether the time spent to negotiate those issues falls under the exception of WIS. STAT. § 767.242(5)(b)2.a. Bernier has not satisfied his burden of showing he is entitled to recover under § 767.242(5)(b)1.b. the reasonable attorney fees incurred to negotiate these issues. Accordingly, while we conclude the circuit court failed to engage in a complete analysis under § 767.242(5)(b)2.a. and (5)(d) to determine whether Bernier is entitled to recover his reasonable attorney fees for the seventeen hours spent in negotiating a settlement to this case, we conclude the circuit court properly determined Bernier was not entitled to those fees because the record was insufficient to make that determination.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

¶ 36. DEININGER, J. (*dissenting*). Because I conclude that WIS. STAT. § 767.242(5)(b)1.b. does not require the circuit court to order Vangelos to reimburse Bernier for the one-half share of guardian ad litem fees the court directed Bernier to pay, I respectfully dissent.

762

I would also affirm the amount awarded to Bernier by the circuit court for attorney fees.

¶ 37. Determining whether WIS. STAT. § 767.242(5)(b)1.b. requires a prevailing petitioner to be awarded guardian ad litem fees as a "cost of maintaining an action under this section" presents a question of statutory interpretation. When we interpret a statute, we are to begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If statutory language is unambiguous, we apply its plain meaning and look no further to determine the legislature's intent. *See id.*, ¶ 46.

¶ 38. Instead of beginning with the statutory language at issue, however, the majority begins its analysis of the guardian-ad-litem-fees issue by considering what the author of an article in WISCONSIN LAWYER had to say about the legislative purpose behind the enactment of WIS. STAT. § 767.242. Majority, ¶ 11. The majority also later concludes, without citation, that the legislature's intent was to encourage parties to vindicate their rights and to provide financial disincentives for a custodial parent to interfere with the other parent's placement rights. Majority, ¶ 16. These may well be goals the legislature had in mind when it enacted § 767.242, but, as a matter of statutory interpretation, we must first attempt to ascertain what the legislature intended regarding awardable costs from the language the legislature enacted into law. *See Kalal*, ¶¶ 45–46. I conclude that, under the plain language of § 767.242(5)(b)1.b., guardian ad litem fees cannot be deemed a "cost of maintaining an action under this section."

763

¶ 39. If a petitioner under Wis. Stat. § 767.242 succeeds in convincing a judge or a circuit court commissioner that the other parent "has intentionally and unreasonably denied the petitioner one or more periods of physical placement or . . . has intentionally and unreasonably interfered with one or more of the petitioner's periods of physical placement," the court "[s]hall . . . *[a]ward the petitioner a reasonable amount for the cost of maintaining an action under this section* and for attorney fees." Wis. Stat. § 767.242(5)(b)1.b. (emphasis added). At first blush, any guardian at litem fees ordered to be paid by a petitioner might seem to be a "cost" of his or her maintaining a placement enforcement action. The term "cost," however, has a "technical or special definition" when used in statutes dealing with litigation costs, which definition, in my view, must be employed when interpreting this statute. *See Kalal*, 271 Wis. 2d 633, ¶ 45.

¶ 40. Wisconsin Stat. § 814.04 details the "items of costs" that are generally "allowed" to a prevailing party in civil litigation. That section specifically excludes guardian ad litem fees from being deemed a "cost": "Guardian ad litem fees shall not be taxed as a cost or disbursement." Section 814.04(2). We have relied on the statutory exclusion of guardian ad litem fees from "costs" in rejecting an argument that guardian ad litem fees are assessable against a parent who brings an arguably frivolous motion to modify physical placement. *Lofthus v. Lofthus*, 2004 WI App 65, ¶ 33 n.8, 270 Wis. 2d 515, 678 N.W.2d 393 ("[Section] 814.04(2) specifically excludes guardian ad litem fees as taxable. Moreover, the guardian ad litem's fees are not considered 'attorney fees' simply because the guardian ad litem is also a lawyer.").

¶ 41. Because guardian ad litem fees are statutorily excluded from being a taxable litigation "cost," if the legislature intended guardian ad litem fees to be awardable as a "cost of maintaining an action" under WIS. STAT. § 767.242(5)(b)1.b., it should have expressly said so. This is especially true given that the legislature was well aware that guardian ad litem fees will often be incurred in an enforcement action under § 767.242. *See* § 767.242(5)(a) ("The judge or circuit court commissioner may, on his or her own motion or the motion of any party, order that a guardian ad litem be appointed for the child prior to the hearing.").

¶ 42. Moreover, I also find it highly significant that guardian ad litem fees are the subject of a separate and specific statutory directive that applies to "any action affecting the family." *See* WIS. STAT. § 767.045(1)(a). The provision for compensating guardians ad litem appointed in proceedings under ch. 767 authorizes the circuit court to exercise discretion in allocating the responsibility for paying guardian ad litem fees between the parties. *See* § 767.045(6) ("The court shall order either or both parties to pay all or any part of the compensation of the guardian ad litem."); *Tesch v. Tesch*, 63 Wis. 2d 320, 339, 217 N.W.2d 647 (1974) ("The services of a guardian ad litem are to protect the interests of the children. Both of the parents are concerned that these interests be protected and that is the reason . . . where both spouses have ability to pay each should be required to contribute to the cost of the guardian ad litem, with the percentage to be paid by each parent left to the discretion of the trial court."). If this subsection were intended to govern the treatment of guardian ad litem fees in all proceedings under ch. 767 except an action under WIS. STAT. § 767.242, one would expect the legislature to have spelled out that exception.

765

¶ 43. Quite simply, the legislature has not specified in WIS. STAT. § 767.242(5)(b)1.b., or elsewhere, that, contrary to its directives regarding guardian ad litem fees in WIS. STAT. §§ 767.045(6) and 814.04(2), guardian ad litem fees must be awarded as a "cost of maintaining an action" under § 767.242(5)(b)1.b. For that reason, I cannot join the majority in concluding that the circuit court erred by not shifting to Vangelos the portion of guardian ad litem fees it had allocated to Bernier.[1] Had the circuit court done as Bernier advocates, that, in my view, would have constituted error: " 'Many expenses of litigation are not allowable or taxable costs even though they are costs of litigation.' Thus, any award of a 'cost' which is not specifically authorized by a Wisconsin statute constitutes an error of law that must be reversed." *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 147, 549 N.W.2d 714 (1996) (citation omitted).

¶ 44. My principal reason for writing separately is my disagreement with the majority's interpretation of WIS. STAT. § 767.242(5)(b)1.b. on the issue of whether guardian ad litem fees are an awardable "cost" under that paragraph. Because I write separately, I must also explain whether I agree or disagree with the majority's conclusion that the circuit court erred in awarding attorney fees to Bernier in the amount that it did. I find I also cannot join that portion of the majority opinion.

---

[1] Bernier argues only that the circuit court erred in failing to require Vangelos to pay all of the guardian ad litem's fees pursuant to the cost-shifting provision under WIS. STAT. § 767.242(5)(b)1.b. That is, he does not claim that the court erroneously exercised its discretion in allocating one-half of the guardian ad litem fees to each party under WIS. STAT. § 767.045(6), making it unnecessary for me to address that question.

¶ 45. As the majority notes, the determination of the amount of reasonable attorney fees to award under a fee-shifting statute is a matter for the circuit court's exercise of discretion, and we accord deference to that court's determination because it is in a better position than we to assess the reasonableness of requested fees in light of the facts and circumstances of the litigation that unfolded before it. Majority, ¶ 23. Under our deferential standard of review, I cannot conclude the circuit court erroneously exercised its discretion in awarding Bernier $11,700 in attorney fees as the prevailing petitioner in his placement enforcement action under WIS. STAT. § 767.242.

¶ 46. The supreme court has adopted the "lodestar" methodology for determining reasonable attorney fees to be awarded under fee-shifting statutes, and the court has "direct[ed] circuit courts to follow its logic when explaining how a fee award has been determined." *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶ 30, 275 Wis. 2d 1, 683 N.W.2d 58. Under the lodestar approach, the starting point is a determination of the number of hours reasonably expended multiplied by a reasonable hourly rate, with upward or downward adjustments made thereafter based on any factors in SCR 20:1.5 (2004) that may be relevant. *Id.*, ¶ 29. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with

767

the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

SCR 20:1.5(a).[2]

¶ 47. I conclude the trial court properly employed the lodestar method as directed by the supreme court in *Kolupar* to determine a reasonable amount of attorney fees to award to Bernier. The court explained its decision to award $11,700 in fees (instead of the $26,422.50 Bernier requested) as follows:

> Cary's request for costs and attorney's fees in the amount of $26,921.86 is comprised of 135.5 hours of attorney time at $195.00 per hour plus $499.36 costs . . . . Of these hours, 20.75 were devoted to preparation for the Family Court Commissioner proceeding on April 8, 2003. Discovery consumed 41.5 hours between April 9 and June 24, 2003. In addition, between 40 and 50 hours were spent on trial preparation and trial time for the hearing on July 25, 2003. Carey's counsel also spent approximately 17 hours on proposed amendments to the parties' Marital Settlement Agreement.
>
> Having presided over Michelle and Carey's divorce trial and post-divorce proceedings, the Court is well aware of the high level of animosity between these parties. This court has repeatedly admonished both parties to set aside their differences for the sake of their children, apparently to no avail. Nevertheless, Carey's attorney's fees request must be evaluated in light of the factors set forth in *Stathus v. Horst.*

---

[2] The factors in SCR 20:1.5(a)(1), (3), and (7) (2004) are essentially subsumed in the determination of a reasonable number of hours and a reasonable hourly rate. *See Lynch v. Crossroads Counseling Ctr., Inc.,* 2004 WI App 114, ¶ 40, 275 Wis. 2d 171, 684 N.W.2d 141.

The Court finds that Attorney Roman's method of billing and hourly rate are reasonable and consistent with local practice. However, the amount of time spent is out of proportion to the complexity of the case and the matters at issue. Carey prevailed on his motion, but this action was at base a conventional post-divorce placement dispute which ballooned out of control. If this case had required expert testimony, psychological evaluations or other outside expertise, extensive discovery and trial preparation may have been justified. The hearing on July 25, 2003, however, took six hours and only two witnesses testified; Michelle and Carey. This Court cannot find reasonable nearly one hundred hours of discovery and preparation for the July 25th motion hearing.

Moreover, the court cannot include the 17 hours allotted to preparation of proposed amendments to the Marital Settlement Agreement on a request for fees under § 767.242. Subsection (5)(d) of that statute prohibits the court from modifying the underlying custody or placement order except as specifically authorized. Any time devoted to that endeavor is not chargeable under the fee-shifting provisions of § 767.242.

There is no doubt that Attorney Roman represented her client[3] zealously and effectively, achieving the result Carey sought. But, as stated above, the time spent was out of proportion to the nature of the motion and the complexity of the issues. Accordingly, to reach a reasonable amount, the attorney fee award shall be reduced as follows: 10 hours for obtaining the April 8 Family Court Commissioner Order; 20 hours discovery time related to the motion to enforce the placement

---

[3] [Footnote by the circuit court] Carey retained Attorney Roman on April 3, 2003. Ms. Roman had not represented Carey before in this matter, so their attorney-client relationship was not longstanding.

order, and 30 hours for hearing preparation, court time, and follow-up associated with the motion hearing.

## ORDER

For the reasons stated, IT IS ORDERED THAT Michelle Vangelos pay attorney's fees to Carey Bernier in the amount of $11,700, representing 60 hours at $195.00 per hour, plus costs in the amount of $499.36.

¶ 48. Thus, the circuit court awarded Bernier attorney fees based on its determination of a reasonable hourly rate ($195, as Bernier's counsel requested) multiplied by the number of hours the court concluded were reasonably expended in prosecuting the placement enforcement action (60 hours). In reducing the hours allowed from those requested (135.5 hours), the court considered an appropriate and relevant factor: the lack of novelty or complexity in the issues litigated. *See* SCR 20:1.5(a)(1). The majority agrees that "this was not a complex case in terms of the issues," and that the dispute 'ballooned out of control." Majority, ¶ 26. Furthermore, the majority specifically approves of the circuit court's disallowance of the seventeen hours devoted to negotiating an amendment to the existing judgment. Majority, ¶ 35. Rather than second-guessing the remainder of the circuit court's reductions in the hours claimed, I would conclude that the court "examined the relevant facts, applied the proper standard of law and, using a demonstrated rational process, reached a reasonable conclusion." Majority, ¶ 23 (citing *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737).

¶ 49. I would affirm the appealed orders and therefore dissent.