In re the Marriage of:

Rana R. Lofthus, n/k/a Rana R. Rogge,
Petitioner-Respondent,

v.

Paul Malcolm Lofthus, Respondent-Appellant.†

Court of Appeals

*No. 03–1754. Submitted on briefs January 6, 2004.—
Decided February 3, 2004.*

2004 WI App 65

(Also reported in 678 N.W.2d 393.)

† Petition to review dismissed 3-10-04.

515

518

519

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Paul Lofthus, pro se*, of New Auburn.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James M. Isaacson* of Cadott.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Paul Lofthus appeals orders appointing a guardian ad litem, denying his motion for modification of a physical placement order, and requiring him to pay the full amount of the guardian ad litem's fees. Paul challenges the constitutionality of the physical placement and guardian ad litem statutes. While we disagree with some of the trial court's rationale, we nonetheless reject Paul's arguments and affirm the orders.

## Background

¶ 2. Paul and Rana Lofthus divorced in January 1996. At that time, their two children were five and

seven years old. The parties were given joint legal custody, but primary placement was with Rana. Paul filed a motion to modify placement in September 1996, claiming that Rana had changed the final placement order conditions. Paul had previously approved a temporary order and agreed to allow Rana to draft the final order, assuming they would be the same. The court ordered mediation, but Paul and Rana could not agree. The court then conducted a hearing on the motion in May 1997, orally ordering changes in the placement.

¶ 3. In July 1997, Paul filed a motion for clarification of the court's oral ruling because disagreements in interpretation prevented the parties from drafting an order for the court's approval. The court then entered its own written order, but heard arguments on the motion in August. Based on the hearing and correspondence, an order modifying placement was entered in December 1997. In October 1998, Paul and Rana entered a stipulation changing placement yet again.

¶ 4. In February 2002, Paul filed a petition for modification claiming the children wanted a change in placement. It is from this petition that the current appeal's issues arise. Paul's main request was for equal time with his children. Paul also objected to appointing a guardian ad litem for the children for further proceedings.

¶ 5. The court held a hearing on the guardian ad litem issue in October 2002. Although there had been a guardian ad litem previously in the case, Paul claimed that one was not necessary this time because he was only challenging the placement of the children and there was no evidence "to raise a concern for the welfare of [his] children." Rana requested the court to appoint the guardian ad litem pursuant to statutory requirements. The trial court concluded that the proposed

521

placement change would be substantial and that it had no option under the law but to appoint the guardian ad litem to represent the children.

¶ 6. The hearing on the modification motion was in March 2003. Paul argued that there had been several substantial changes since the last time placement was changed, warranting modification. Paul also argued that appointment of the guardian ad litem and anything less than equal placement unfairly burdened his constitutional right to the care and custody of his children.

¶ 7. The trial court rejected the constitutional challenges, concluded that Paul had not met the "substantial change of circumstances" threshold for modifying placement,[1] and concluded that in any event modification was contrary to the children's best interests. The court then required that Paul pay the guardian ad litem's fees in full, rather than dividing them between Paul and Rana, because it concluded that Paul was advancing a theory of the case that had been previously tried and rejected multiple times by litigants in other cases. Paul appeals.

---

[1] *See* WIS. STAT. § 767.325(1)(b)1.b: "[U]pon petition, motion or order to show cause by a party, a court may modify an order of . . . physical placement where the modification would substantially alter the time a parent may spend with his or her child if the court finds . . . [t]here has been a substantial change of circumstances since the entry of the last order affecting . . . physical placement."

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## Discussion

## Whether Paul Has A Constitutional Right to Equal Placement

¶ 8. The constitutionality of statutes is a question we review de novo. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). Statutes are presumed constitutional, and we will sustain a statute as constitutional if there is any reasonable basis for the legislature's choice to enact it. *Id.* The party challenging a statute as unconstitutional bears the burden of proving so beyond a reasonable doubt. *Id.*

¶ 9. Paul's arguments are premised on an underlying assumption of an absolute right to equal placement. He relies heavily on *Troxel v. Granville*, 530 U.S. 57 (2000), to argue that he has a fundamental right to equal placement. *Troxel*, however, is distinguishable. There, the United States Supreme Court held that the application of a statute granting paternal grandparents visitation rights violated the mother's right to raise her children. *Id.* at 68–75. In this holding, the Court reaffirmed the liberties protected by the due process clause of the Fourteenth Amendment include "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. It is with this fundamental right that Paul claims the physical placement statutes are incompatible.

¶ 10. This case, however, does not involve a conflict between a parent and two grandparents. It involves two parents with equal rights. Moreover, we agree with *Troxel*'s underlying principle: Parents have a funda-

mental right to the care and custody of their children. *See Barstad v. Frazier,* 118 Wis. 2d 549, 556–57, 348 N.W.2d 479 (1984). But this does not mean parents have an absolute fundamental right to equal placement after divorce.

¶ 11. In *Lassiter v. DSS,* 452 U.S. 18, 27 (1981), the Supreme Court wrote that the parent's right to custody and care of his or her children "undeniably warrants deference and, absent a powerful countervailing interest, protection." Here, the State's countervailing interest is the need to have heightened judicial supervision over divorced families because of unique problems that exist in a home split by divorce. *See LeClair v. LeClair,* 624 A.2d 1350, 1357 (N.H. 1993).

¶ 12. While Paul argues that he and Rana have both been determined fit parents and this precludes the state's involvement, he has not demonstrated how or why, after a divorce, the state does not have the right to arbitrate a dispute between parents who cannot agree on what should happen to their children.[2] Indeed, Paul and Rana's repeated appearances before the court because of their mutual inability to deal with placement demonstrates the very need for state intervention. Therefore, the state's regulation of post-divorce custody disputes is not constitutionally impermissible.[3]

---

[2] For the same reason, we reject Paul's constitutional argument that appointment of a guardian ad litem is an unwarranted intrusion into his family.

[3] We reached a similar result based on *Troxel v. Granville,* 530 U.S. 57 (2000), in *Arnold v. Arnold,* 2004 WI App 62, ¶¶ 8–11, 270 Wis. 2d 705, 679 N.W.2d 276.

## Whether Paul Has a Statutory Right to Equal Placement

¶ 13. Interpretation of a statute is a question of law. *In re Curiel*, 227 Wis. 2d 389, 404, 597 N.W.2d 697 (1999). Paul's statutory basis for his claim to equal placement is in Wis. Stat. § 767.24(4)(a)2,[4] which states: "In determining the allocation of periods of physical placement, the court shall . . . set a placement schedule that allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that maximizes the amount of time the child may spend with each parent . . . ." This language was added to § 767.24 in 1997 and took effect after the initial placement order in this case. Previously, the statute made no mention of meaningful periods or maximized time and the court was therefore not required to consider these two factors.

¶ 14. However, we recently rejected the contention that Wis. Stat. § 767.24(4)(a)2 requires equal placement. *Keller v. Keller*, 2002 WI App 161, ¶ 12, 256 Wis. 2d 401, 647 N.W.2d 426. Regardless whether Paul agrees with that result, and regardless whether we agree, we are bound by our previous decisions and cannot modify them. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997).

---

[4] In the trial court, Paul claimed he had "never asserted that 767.24(4)(a)(2) did presume equal placement." In his appellate brief, he argues that we should conclude that there is a "statutory right to assume equal periods of placement," citing Wis. Stat. § 767.24(4)(a)2. These positions are inconsistent.

## Whether There Was a Substantial Change of Circumstances

¶ 15. Paul initially argued that the "substantial change of circumstances" requirement of WIS. STAT. § 767.325(1)(b)1.b created an unconstitutional burden on the parent seeking modification. However, because there is no constitutional or even statutory requirement for equal placement between parents, we cannot conclude that § 767.325(1)(b)1.b's substantial change of circumstances requirement is an unconstitutional impediment to modifying placement. Nonetheless, Paul alleges the court erred by not concluding that there had been a substantial change of circumstances.

¶ 16. The circuit court has wide discretion in making physical placement decisions. *Wiederholt v. Fischer*, 169 Wis. 2d 524, 530, 485 N.W.2d 442 (Ct. App. 1992). We sustain a discretionary decision if the court made its determination based on facts of record, demonstrated logical rationale, and made no error of law. *Licary v. Licary*, 168 Wis. 2d 686, 692, 484 N.W.2d 371 (Ct. App. 1992).

¶ 17. Under WIS. STAT. § 767.325(1)(b)1.b, a substantial change of circumstances is a prerequisite to modifying a physical placement order. Whether there has been a substantial change of circumstances is a mixed question of law and fact. *Rosplock v. Rosplock*, 217 Wis. 2d 22, 32–33, 577 N.W.2d 32 (Ct. App. 1998). The circuit court's fact finding regarding circumstances "before," at the time of the last order substantially affecting placement, and "after," at the time of the new motion, and whether when compared these facts con-

stitute a change will not be disturbed unless they are clearly erroneous. *Id.* at 33. However, whether the change is substantial is a question of law we review de novo. *Id.* A substantial change of circumstances is one such that it would be unjust or inequitable to strictly hold either party to the original judgment. *Id.*

¶ 18. Paul points to seven changes he claims warrant modification. He argues that (1) the children are older;[5] (2) he lives closer to them; (3) he is now self-employed and can be available more often; (4) he is available to transport the children daily to school; (5) his children have a new half-sister from Paul's remarriage and that visitation would be beneficial to the children and the half-sister; (6) his son was struggling in school; and (7) a change in the law from the time of the original order requires the court to award equal placement when both parents are fit.[6] He complains the trial court did not explain why these are not substantial changes.

¶ 19. We note initially that Wis. Stat. § 767.325(1)(b)2.b creates a rebuttable presumption for maintaining the current placement schedule. Moreover, § 767.325(1)(b)1.a requires the court to also find the change would be in the children's best interests, regardless whether there are also substantial changes in circumstances.

---

[5] In 2004 the children will be thirteen and fifteen.

[6] Paul also complains that Rana is not following parts of the court order, such as consultation regarding major medical decisions. While we understand his frustration if this is indeed the case, this is not necessarily a substantial change of circumstances. Indeed, Paul's more appropriate recourse is a contempt motion against Rana for failure to comply with the placement order's terms.

¶ 20. Although the trial court was somewhat cryptic in its oral decision, we conclude that the court determined Paul's proposed changes would not be in the children's best interests. The guardian ad litem reported that the children had no desire to change the schedule. She suggested their wishes be considered. The court noted that it believed the guardian ad litem's analysis because she was a more credible, neutral party in the dispute.

¶ 21. We will search the record for reasons to sustain the trial court's exercise of discretion. *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737. By adopting the guardian ad litem's report to the court that the children were adjusted under the current arrangement, the implicit ruling is that a change would lead to maladjustment and would not be in the children's best interests.

¶ 22. We also note that Paul has not overcome the presumption for maintaining the status quo because none of the facts he relies on, singularly or cumulatively, constitute a substantial change. If we declared the natural aging process of the children to be a substantial change warranting placement modification, there would *always* be a basis for modification in every case. The legislature, by creating a presumption of the status quo, meant to raise the bar.

¶ 23. Also, Paul's change in residence is not a substantial change. Previously, he lived twenty-six miles from Rana and now lives ten miles away. This move is de minimus. If previously he had lived, for example, one hundred miles away, his placement might have been significantly limited because the court would likely have considered the difficulty of transferring the children. We might then consider the new residence to

be a more important factor because a significant impediment to placement had been eliminated. However, there is no evidence to suggest Paul's initial placement was limited because of where he lived. In short, there is nothing Paul can do now living ten miles away that the court believed he could not do when he lived twenty-six miles away.

¶ 24. We do not believe Paul's employment status is currently relevant. The trial court made no explicit finding regarding this, but we do note that in some of the earlier filings in this case it was noted that Paul was self-employed. We are therefore unconvinced that there has been a substantial change in Paul's employment status because it appears to have already been considered at some point in the current placement decision.

¶ 25. Paul also fails to demonstrate why being able to transport his children to school is a substantial change. In the trial court, he contended they are now eligible to be bused from his home because he lives within a certain radius, but provided no evidence that the children would actually be placed on a bus route. On appeal, he changes his argument and states that because he now lives closer to the school, he can drive the children himself. However, this does not rise to the level of a substantial change. Paul makes no showing why this change makes it unfair to hold him to the original order.

¶ 26. WISCONSIN STAT. § 767.325(1)(b)3 states that a change in marital status is not sufficient to meet the substantial change of circumstances standard. Paul's third child is a result of the new marriage. We are unpersuaded that the new sibling is a substantial change. The two children already spend time with their half-sister when they are with Paul. Paul also argued that more visitation would benefit the half-sister. While

this may be true, the well-being of a child who is not a child of both parties is irrelevant in the case before us.

¶ 27. There was evidence presented that the son received an "F'" on several science assignments, a history test, and two reading assignments. However, there was also evidence that the son had improved his performance, particularly in the reading class. The trial court ultimately concluded, based on updated progress reports and a letter from one of the son's teachers, that: "This idea that you propose, Mr. Lofthus, isn't borne out by the testimony . . . . He's getting good grades. He's getting a lot better grades than average." In any event, Paul has not shown that the current placement schedule contributed to the failing grades or that any academic problem would be remedied by the proposed placement.

¶ 28. Finally, regarding the change in the law, we have already determined that it does not mandate equal time. Moreover, we usually do not consider changes in the law to be substantial changes for modifying orders. *See, e.g., Licary*, 168 Wis. 2d at 692 ("The 1988 amendments to the custody statutes are not, in and of themselves, a substantial change of circumstances.").

### Whether A Guardian Ad Litem Should Have Been Appointed

¶ 29. Apart from his constitutional objection, Paul objected to the guardian ad litem appointment because he did not believe the circumstances involved in the modification motion justified the expense of an appointment. Sometimes the decision to appoint a guardian ad litem will be discretionary. *DeMontigny v.*

*DeMontigny*, 70 Wis. 2d 131, 137, 233 N.W.2d 463 (1975). However, Wis. Stat. § 767.045 states in part:

> (1) . . . (a) The court *shall* appoint a guardian ad litem for a minor child in any action affecting the family if any of the following conditions exists:
>
> . . . .
>
> 2. Except as provided in par. (am), the legal custody or physical placement of the child is contested.
>
> (am) The court *is not required* to appoint a guardian ad litem under par. (a) 2. *if all of the following apply:*
>
> . . . .
>
> 2. *The modification sought would not substantially alter the amount of time* that a parent may spend with his or her child. (Emphasis added.)

¶ 30. Paul acknowledged the statute and conceded the modification he sought *would* substantially alter the amount of time he would be spending with his children, but nevertheless urged the court to essentially ignore the statute and not appoint a guardian ad litem. Based on Paul's concession, the court was required under Wis. Stat. § 767.045(1)(am)2 to appoint the guardian ad litem.[7]

---

[7] We also note that: (1) Paul had not previously objected to a guardian ad litem at the beginning of this case and in fact had been the one to request the guardian ad litem in 1996, and (2) with regard to the 2002 motion, Rana had provided a list of four possible attorneys for the role, all of whom Paul rejected before he personally selected the attorney who was appointed.

Paul also complains the guardian ad litem was unnecessary because both he and Rana were "fit." As the trial court noted, the guardian ad litem is an advocate for the children and their

## Whether Paul Should Pay All the
## Guardian Ad Litem Fees

¶ 31. Paul next objects to the court requiring him to pay all of the guardian ad litem fees. The court concluded that Paul had overlitigated the case by submitting an argument that had failed in other cases.

¶ 32. We disagree that this is a reasonable basis for requiring Paul to pay all the fees. Paul had not previously advanced his constitutional argument in *this* case and the fact that he apparently found briefs or arguments on the Internet does not mean he should not be allowed to make the arguments if he believes they legitimately fit the facts of his case. Moreover, he had at least a colorable claim that there was a substantial change in circumstances, despite the fact that we reject the argument on appeal.

¶ 33. Nonetheless, we conclude that the order to pay the guardian ad litem was appropriate. WISCONSIN STAT. § 767.045(6) states: "The court shall order either or both parties to pay all or any part of the compensation of the guardian ad litem." Determining who pays is a discretionary decision. *Lacey v. Lacey*, 45 Wis. 2d 378, 389, 173 N.W.2d 142 (1970). Although the court articulated one reason for its decision, we may independently search the record to determine whether additional reasons exist to support the court's determination.

---

best interests—someone who "doesn't have an ax to grind." It is difficult for parents to contend either one can represent the children's interests in a disputed custody or placement case because, by the very nature of the case, the parents disagree on what is best. Appointing a guardian ad litem is not akin to determining parents are unfit or uncaring.

*Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 573, 538 N.W.2d 849 (Ct. App. 1995).[8]

¶ 34. We conclude that Paul's motion for modification involved a certain degree of abuse of the legal system. On direct examination, Rana's attorney had this exchange with Paul:

> [ATTORNEY]: Just so I'm clear, Mr. Lofthus, your argument is that the statutory requirement now that exists in Wisconsin to being change of circumstances isn't fair to you and you want the court to ignore it, basically. Is that it?
>
> [PAUL]: Yes.

¶ 35. In asking the circuit court to find a guardian ad litem unnecessary, Paul noted that WIS. STAT. § 767.045(1)(am)2 required a guardian when modification substantially alters placement. Then, while he acknowledged that his proposed changes would substantially alter placement, he insisted that no guardian be appointed.

¶ 36. To succeed in the trial court, Paul's case depended in part upon the court agreeing to disregard its duty to apply the law of this state.[9] Parties may argue that a court overrule or modify existing legislation, but they may not expect the court to ignore it. We

---

[8] Rana argues on appeal that sanctions were appropriate based on WIS. STAT. § 814.025, which allows the court to award the successful party costs and attorney fees under § 814.04 if an action is deemed frivolous. However, § 814.04(2) specifically excludes guardian ad litem fees as taxable. Moreover, the guardian ad litem's fees are not considered "attorney fees" simply because the guardian ad litem is also a lawyer.

[9] Again, we note that Paul told the circuit court he was not claiming that WIS. STAT. § 767.24(4)(a)(2) required a presumption of equal placement. However, he argues the opposite to us.

cannot condone parties bringing cases contingent upon such an expectation, which only serves to needlessly prolong litigation and raise costs. We fail to see how placing the resulting financial burden on Paul constitutes an erroneous exercise of discretion.

*By the Court.*—Orders affirmed.