COURT OF APPEALS
DECISION
DATED AND FILED

October 18, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP868**

Cir. Ct. No. **2013FA900**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

EMMALEE ANN BIEHL P/K/A EMMALEE ANN HYDE,

PETITIONER-APPELLANT,

V.

NATHAN DAVID HYDE,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Outagamie County: MARK G. SCHROEDER, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. Emmalee Biehl appeals an order increasing Nathan Hyde's physical placement of the parties' then nearly eight-year-old daughter,

which resulted in the parties having equal placement of the child.[1] Biehl argues that the circuit court should not have modified placement because Hyde failed to establish a substantial change of circumstances since their original divorce judgment and because he failed to rebut the presumption that continuing the originally ordered periods of physical placement was in the child's best interest.

¶2 We conclude that Hyde has established a substantial change of circumstances. Since the original divorce judgment, Hyde has relocated much closer to his daughter and has purchased his own home; he has obtained a new job that allows him to work exclusively from home and to set his own work schedule, which permits him to spend more time with his daughter and reduces her need for childcare; he has married a woman who also works from home, and they have one child together; and the parties' daughter has reached an age where she can more effectively express—and has expressed—a desire to spend more time with her father. Although some of these changes, in some way, may be related to Hyde's economic circumstances and marital status or the child's natural aging, we conclude that the circumstances in this case are sufficient to establish a substantial change of circumstances.

¶3 In addition, the circuit court did not erroneously exercise its discretion by determining that modification of physical placement was in the child's best interest. In reaching that conclusion, the court rationally considered and weighed the relevant statutory factors regarding the child's best interest and

---

[1] Although the Honorable Mark G. Schroeder issued the written order at issue in this appeal, that order was pursuant to an oral ruling by the Honorable John A. Des Jardins. Other than the final order, Judge Des Jardins presided over the relevant proceedings in this appeal.

the rebuttable presumption under WIS. STAT. § 767.451(1)(b)2.b. (2019-20),[2] that maintaining the status quo with respect to physical placement is in the child's best interest. The court's discussion of the presumption also does not suggest, as Biehl contends, that it applied an improper legal standard. Accordingly, we affirm.[3]

## BACKGROUND

¶4      The parties were previously married to each other and have one daughter, who was born in March 2013. Shortly thereafter, the parties separated and later obtained a divorce judgment in November 2014. The judgment awarded the parties joint legal custody of their nearly two-year-old daughter and adopted the parties' stipulation in their marital settlement agreement regarding physical placement. Pursuant to that stipulation, Biehl had physical placement with their daughter for nine out of every fourteen days and Hyde had placement on the remaining five days. Specifically, Hyde had overnight placement every Wednesday and every other weekend, while Biehl had placement on the remaining days.

¶5      At the time of their divorce, Hyde lived in Marinette, Wisconsin, at his parents' home, and Biehl lived in Pulaski, Wisconsin. Hyde was employed as a call center supervisor, which required him to be present in the office from approximately 8:00 a.m. to 5:00 p.m., Monday through Friday.

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] Biehl's briefs violate WIS. STAT. RULE 809.19(1)(i) by repeatedly referring to the parties as "Appellant" and "Appellee"—i.e., party designations—instead of by each of the party's names. We admonish Biehl's counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

¶6 In October 2019, Hyde filed a motion to modify the divorce judgment to provide the parties with equal periods of physical placement of their daughter, who was then six years old. Hyde reasoned that such a modification was justified, in part, because he had remarried and obtained new employment that allowed him to work at home. In addition to the reasons stated in Hyde's motion, Hyde later established that he had purchased and moved into a home in Green Bay, Wisconsin; that his wife also works from home; and that his daughter has had very positive interactions with his and his wife's newborn son.

¶7 The parties agreed to the appointment of a guardian ad litem (GAL) and stipulated to the completion of a custody study by Family Court Services in Outagamie County. During that study, the parties' daughter told the evaluator, Lynn Schroeder, that she wanted to spend equal time with her parents. At the conclusion of the custody study, Schroeder recommended that Hyde and Biehl have equal physical placement of their daughter.

¶8 Biehl later moved for summary judgment, arguing that Hyde's remarriage, his new job, and their daughter's age were insufficient, as a matter of law, to show a substantial change of circumstances since the 2014 divorce judgment. The circuit court denied Biehl's motion at a hearing in December 2020, concluding that Hyde had established a substantial change of circumstances. Specifically, the court found Hyde's move from Marinette to Green Bay and his new job with "flexible work hours and work-from-home status" to be substantial changes. The court also noted that while Hyde's remarriage and new child were not substantial changes on their own, those circumstances "may increase [Hyde's] availability [to] exercise additional placement."

¶9    The circuit court subsequently held two hearings to determine whether modifying physical placement was in the child's best interest.  After considering the testimony at the hearings, the court concluded that equal placement with each parent was in the best interest of the parties' daughter.  The court acknowledged that there was a statutory presumption in favor of maintaining the existing placement, but it determined that Hyde had rebutted that presumption.  In reaching that decision, the court noted that "the largest factor here seems to be the child's sincere wish that she … spend … equal time with each parent."  In addition, the court recognized that Hyde had proposed a one-day change to placement per week and that their daughter is "amenable to change."

¶10    Thereafter, the circuit court issued an order granting Hyde's motion and modifying the divorce judgment to provide each party with equal physical placement of their child.  Biehl now appeals.

## DISCUSSION

¶11    In general, and as relevant here, a circuit court may modify an order concerning a child's physical placement after two years since the final judgment determining physical placement if: (1) there has been a substantial change of circumstances since the entry of the last order substantially affecting physical placement; and (2) modification is in the child's best interest.  WIS. STAT. § 767.451(1)(b)1.  On appeal, Biehl argues that Hyde failed to establish either of the bases for the court to modify placement.

¶12    Before addressing the substance of Biehl's arguments, however, we must first address Hyde's argument regarding the scope of our review.  Hyde argues that we lack jurisdiction to review the circuit court's order concluding that there was a substantial change of circumstances because Biehl did not timely

appeal the court's "final determination" as to that issue. Hyde contends that such an order constitutes a "final order" for the purpose of filing an appeal because it "effectively resolved the issue at that point of the litigation."

¶13    Hyde is wrong. The circuit court's initial order concluding there was a substantial change of circumstances was not a "final order" for the purpose of appeal because the order did not "dispose[] of the entire matter in litigation as to one or more of the parties." *See* WIS. STAT. § 808.03(1). In fact, the court had yet to address the second question necessary to resolve Hyde's motion—namely, whether modification was in the best interest of the parties' daughter. *See* WIS. STAT. § 767.451(1)(b)1. Thus, the court's initial order left unresolved a substantive issue raised by Hyde's motion to modify physical placement, which was the "matter in litigation." *See* § 808.03(1); ***Wambolt v. West Bend Mut. Ins. Co.***, 2007 WI 35, ¶33 n.10, 299 Wis. 2d 723, 728 N.W.2d 670 ("It is certainly the case where substantive issues remain, a document dismissing or adjudging only part of the action cannot constitute a final order or final judgment for purpose of appeal under § 808.03(1).").

¶14    In addition, a timely appeal from a final order "brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon." WIS. STAT. RULE 809.10(4). Hyde does not dispute that Biehl filed a timely appeal of the circuit court's later order modifying physical placement, which was a final order. Accordingly, RULE 809.10(4) permits our review of the court's order concluding there was a substantial change of circumstances because the order was adverse to Biehl (the appellant) and favorable to Hyde (the respondent) and had not been previously appealed or ruled upon. *See **id.***

**I. Substantial change of circumstances**

¶15    To establish a substantial change of circumstances, the moving party must show that "the facts on which the prior order was based differ from the present facts" and that difference is enough to justify the court's considering whether to modify the prior order. *Shulka v. Sikraji*, 2014 WI App 113, ¶24, 358 Wis. 2d 639, 856 N.W.2d 617 (citation omitted). As relevant to this appeal, "[a] change in economic circumstances or marital status of either party is not sufficient" to establish a substantial change of circumstances. WIS. STAT. § 767.451(1)(b)3.

¶16    Whether a party seeking to modify an existing physical placement order has established a substantial change of circumstances is a question of law that we review de novo. *Shulka*, 358 Wis. 2d 639, ¶25. Although we independently review whether there was a substantial change of circumstances, we give some weight to the circuit court's conclusion "because the determination is heavily dependent upon an interpretation and analysis of underlying facts." *Id.* We will not set aside the court's findings of fact—as to the present circumstances or the circumstances on which the prior order was based—unless those findings are clearly erroneous. *Lofthus v. Lofthus*, 2004 WI App 65, ¶17, 270 Wis. 2d 515, 678 N.W.2d 393; *see also* WIS. STAT. § 805.17(2).

¶17    In concluding that there was a substantial change of circumstances since the prior physical placement order, the circuit court primarily relied on our decision in *Franks v. Smiley*, No. 2018AP2278, unpublished slip op. (WI App

7

June 23, 2020).[4]   In *Franks*, a father had stipulated to the original order concerning legal custody and physical placement of his daughters. *Id.*, ¶5.  He did so under circumstances where he shared a two-bedroom apartment with another adult male, his daughters did not have their own living space in his shared apartment, he worked two jobs requiring him to work inflexible hours, and he struggled financially, which impacted his ability to share quality time with his children. *Id.*  When the father sought to modify that order several years later, he established that his daughters were older and had a close relationship to his new stepdaughter, that he had acquired a home with space for his daughters to stay, that he had obtained employment with flexible hours, and that he had achieved greater financial stability. *Id.*, ¶18.  The GAL also reported that the daughters wanted to spend more time with their father. *Id.*, ¶8.  Under those facts, we concluded that the father had established a substantial change of circumstances. *Id.*, ¶23.

¶18     Many of the changes noted in *Franks* are akin to the circumstances in this case.  Namely, Hyde's daughter is now older and has expressed a desire to spend equal time with her parents; Hyde has obtained different employment that allows him to work exclusively from home and to set his own work schedule; and Hyde has remarried and purchased a home with his wife where they are raising their newborn son.  Additionally, Hyde has also moved from Marinette to Green Bay, which is considerably closer to Biehl's residence.

¶19     Many of these changes have meaningfully improved Hyde's ability to care for, and exercise physical placement of, his daughter.  In particular, by

---

[4] An unpublished opinion authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

working from home and having flexible work hours, Hyde has a much better ability now, than at the time of the divorce judgment, to respond to his daughter's needs, either at school or at home, and to reduce the amount of time she spends in childcare. Similarly, Hyde's relocation to Green Bay allows him to be more available to his daughter and reduces the amount of time she must spend traveling. Hyde is also able to provide a more suitable living arrangement for his daughter now, than he could at the time of the divorce judgment, because his wife can assist him in caring for his daughter and because he and his wife are also raising their son in the same home.

¶20     Biehl categorizes several of the aforementioned changes as changes in Hyde's marital status and economic circumstances, and she contends that those changes are insufficient under WIS. STAT. § 767.451(1)(b)3. to establish a substantial change of circumstances. Biehl fails to consider our discussion in *Franks*, however, where we rejected a similar argument that § 767.451(1)(b)3. prevented a court from considering circumstances attendant to a change in economic circumstances or marital status.[5]  We explained that "most factors bearing upon the proper placement for a child can be tied in some fashion to 'economic circumstances' or 'marital status.'"  *Franks*, No. 2018AP2278, ¶20. However, § 767.451(1)(b)3.'s use of the word "sufficient," we explained, demonstrates that the statute

> is meant to preclude modification of legal custody or
> placement based solely on the fact that a party has married

---

[5] Indeed, Biehl never addresses *Franks v. Smiley*, No. 2018AP2278, unpublished slip op. (WI App June 23, 2020), in either of her appellate briefs. While *Franks* is citable only for its persuasive value and is not binding as precedent, *see* WIS. STAT. RULE 809.23(3)(b), the similarities of that case to this one, combined with both the circuit court's and Hyde's prominent reliance on it, caution in favor of Biehl's addressing *Franks*.

or divorced or finds himself or herself better or worse off financially since the time of the original order. This limitation does not mean that certain considerations attendant to such circumstances—such as the amount of time the party is available to spend with the child, the suitability of the party's living arrangements, the party's work schedule, or changes in the parent's relationship with the child—are prohibited in determining whether a substantial change of circumstances has occurred.

*Franks*, No. 2018AP2278, ¶20. Thus, § 767.451(1)(b)3. does not prohibit this court from considering changes attendant to Hyde's improved economic circumstances and his remarriage, such as his flexible work schedule, his increased availability to care for his daughter, and his ability to provide suitable living arrangements.

¶21    Biehl also argues that Hyde's change in residence "should have been given little to no weight" by the circuit court. She contends that Hyde was leasing an apartment in Green Bay at the time of the divorce judgment and stayed at his parents' home in Marinette only when he had placement of the parties' daughter. Biehl never argues, however, that the court's finding regarding Hyde's change in residence was clearly erroneous.

¶22    Even if Biehl had challenged the circuit court's finding that Hyde lived in Marinette at the time of the divorce, we could not conclude that such a finding was clearly erroneous. Hyde testified at his deposition—and at a later hearing—that he resided at his parents' home in Marinette when he entered into the final stipulation for the divorce judgment. Notably, the divorce judgment also included an express finding that Hyde lived in Marinette. Although Hyde acknowledged that he and "a significant other" had leased an apartment in Green Bay "for a few months" and that he traveled back to Marinette to exercise placement with his daughter, he never testified that he was living at that apartment

at the time of the parties' divorce, nor did he retract his earlier testimony about living with his parents. Thus, Hyde's original testimony about living in Marinette provided a sufficient basis for the court to find that he had resided in Marinette at the time of the divorce. The court, therefore, did not err in considering Hyde's change in residence when determining whether there was a substantial change in circumstances.

¶23 Finally, Biehl argues that her daughter's wishes regarding placement should not be considered because "the personal preference of a child is not a controlling consideration on the issue of custody unless the child gives substantial reasons why it would be against his or her best interests to award custody contrary to such expressed preference." *See Haugen v. Haugen*, 82 Wis. 2d 411, 417, 262 N.W.2d 769 (1978). Biehl fails to explain how this particular quote from *Haugen* applies to the issue of whether a substantial change of circumstances has occurred in this case. Regardless, Biehl's argument is misplaced. We do not, nor did the circuit court, deem the personal preference of the parties' daughter to be "a controlling consideration" in determining whether a substantial change of circumstances has occurred. Rather, her preference is one fact in a host of changes that, taken together, support the conclusion that there has been a substantial change of circumstances.

¶24 In sum, we conclude that Hyde has established a substantial change of circumstances. Hyde's living arrangements and employment circumstances have materially changed since the divorce judgment in November 2014. *See Landwehr v. Landwehr*, 2006 WI 64, ¶31, 291 Wis. 2d 49, 715 N.W.2d 180 (concluding the circuit court had reasonably determined that there was a substantial change of circumstances due to the father becoming self-employed and moving closer to his children). Hyde has also fostered a positive relationship with

his daughter, who has asked to spend equal time with her parents. *See Franks*, No. 2018AP2278, ¶23 (recognizing that a child's improved ability to express their own wishes might support a conclusion of a substantial change of circumstances). All of these changes demonstrate that Hyde is in a meaningfully better position to care for, and exercise physical placement of, his daughter since the divorce judgment.

## II. Best interest of the child

¶25 In determining whether the modification of a physical placement order is in the best interest of the child, a circuit court must consider all of the facts relevant to the child's best interest and the factors set forth in WIS. STAT. § 767.41(5)(am). As relevant to this appeal, a court must consider the child's wishes; the child's interaction and interrelationship with his or her parents and others; the child's adjustment to home, school, religion and community; the age of the child and the child's developmental and education needs; the need for regularly occurring and meaningful periods of physical placement; each party's ability to support the other party's relationship with the child; and the reports of appropriate professionals if admitted into evidence. Sec. 767.41(5)(am)2.-3., 5.-6., 8., 11., 15.

¶26 In addition, there is a rebuttable presumption that "[c]ontinuing the child's physical placement with the parent with whom the child resides for the greater period of time is in the best interest of the child." WIS. STAT. § 767.451(1)(b)2.b. This presumption embodies the legislature's recognition that children benefit from continuity in their physical placement. *See Abbas v. Palmersheim*, 2004 WI App 126, ¶¶24, 40, 275 Wis. 2d 311, 685 N.W.2d 546; *see also Landwehr*, 291 Wis. 2d 49, ¶34 n.13.

¶27    We review a circuit court's determination regarding a child's best interest for an erroneous exercise of discretion. *Shulka*, 358 Wis. 2d 639, ¶25. We will affirm the court's determination if the court applied the correct legal standard to the facts of record and reached a reasonable result. *Keller v. Keller*, 2002 WI App 161, ¶6, 256 Wis. 2d 401, 647 N.W.2d 426. In our review, we search the record for reasons to sustain the court's exercise of discretion. *See id.*

¶28    Biehl argues that the circuit court applied an improper legal standard by failing "to give proper weight and effect" to the rebuttable presumption set forth in WIS. STAT. § 767.451(1)(b)2.b. Specifically, Biehl interprets several of the court's comments as "weakening the presumption" and lowering Hyde's burden of proof. Biehl argues that WIS. STAT. § 903.01 governs "the weight" of the presumption in § 767.451(1)(b)2.b.

¶29    WISCONSIN STAT. § 903.01 provides:

> Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain basic facts are prima facie evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

Our supreme court has recognized that § 903.01 creates "a uniform quantum of proof" for "[a]ll presumptions at common law and all statutory presumptions which do not express a quantum of proof." *Kruse v. Horlamus Indus., Inc.*, 130 Wis. 2d 357, 366, 387 N.W.2d 64 (1986). Where a statutory presumption does not express a quantum of proof, § 903.01 imposes the civil standard of proof, which is equivalent to "the greater weight of the credible evidence," *see Kruse*, 130 Wis. 2d

at 366, and the "preponderance of the evidence" standards, *see* ***Marquez v. Mercedes-Benz USA, LLC***, 2012 WI 57, ¶37, 341 Wis. 2d 119, 815 N.W.2d 314.

¶30    We agree with Biehl that WIS. STAT. § 903.01 is instructive of the proof required to rebut the presumption in WIS. STAT. § 767.451(1)(b)2.b. because that presumption lacks an express standard of proof.[6]    Thus, to rebut the presumption in § 767.451(1)(b)2.b., the party seeking modification of physical placement must prove that "the nonexistence of the presumed fact"—i.e., the child's best interest is served by continuing the existing placement—"is more probable than its existence."    *See* § 903.01.    Put differently, the party seeking modification must prove, by a preponderance of the evidence, that continuing the existing placement is not in the child's best interest.[7]

¶31    Although we agree that WIS. STAT. § 903.01 is instructive of the standard of proof required here, we do not believe, as Biehl argues, that the circuit court weakened the presumption or lowered Hyde's burden of proof.  Biehl takes particular issue with the court's statements that the "presumption should not be merely taken to make changes difficult" and that "put[ting] a whole lot of weight

---

[6] Biehl does not advance any argument that WIS. STAT. § 767.451(1)(b)2.b. imposes an even higher standard of proof than the standard set forth in WIS. STAT. § 903.01.  We therefore do not address or consider whether the "clear and convincing evidence" standard of proof should apply to the presumption in § 767.451(1)(b)2.b.

[7] Importantly, because a circuit court must determine whether modification is in the *best* interest of the child, *see* WIS. STAT. § 767.451(1)(b)1.a., the party seeking to rebut the presumption in § 767.451(1)(b)2.b. is not required to show that the existing placement is inadequate or that the child is struggling.  Rather, the party seeking modification could rebut the presumption by persuading the court that the proposed modification (or some other modification) better serves the child's interests than the existing placement.  Such an interpretation does not render the presumption superfluous because the presumption establishes who bears the burden of proof and reminds the court about the general preference in favor of maintaining continuity in physical placement.

on this presumption would be hard on this child." While these statements did occur in the context of the court rejecting Biehl's argument that Hyde had failed to rebut the presumption, Biehl fails to consider these comments in the context of the court's broader discussion. Specifically, the court made these comments while discussing, among other things, the daughter's "sincere wish" to spend equal time with her parents, the daughter's ability to adapt to change, and the "good reasons" that supported the modification of physical placement.

¶32 When considered in the proper context, the circuit court's statements demonstrate that the court contemplated the presumption in WIS. STAT. § 767.451(1)(b)2.b. but concluded that modification was in the child's best interest. In particular, by stating that it "would be hard" on the child if the court relied on the presumption, the court undoubtedly determined that continuing the existing placement was not in the absolute best interest of the child. Further, we do not interpret any of the court's other statements as demonstrating an improper understanding or application of the presumption. Accordingly, we cannot conclude, on this record, that the court applied an improper legal standard when determining whether Hyde had rebutted the presumption in § 767.451(1)(b)2.b.

¶33 Biehl also argues that none of the factors in WIS. STAT. § 767.41(5)(am) support the circuit court's conclusion that modifying physical placement was in the child's best interest or that Hyde had rebutted the presumption. In addition, Biehl contends that the court failed to explain what factors it relied upon in its decision to modify placement.

¶34 Although the circuit court did not explicitly reference all of the subdivisions in WIS. STAT. § 767.41(5)(am) upon which it relied, the record demonstrates that the court considered the relevant factors in § 767.41(5)(am) and

that those factors supported the court's determination that modifying placement was in the child's best interest.[8] Both parties submitted written briefs to the circuit court regarding the motion to modify physical placement, which discussed, among other things, the factors relevant to the child's best interest. The parties also had an opportunity to discuss the relevant factors in their oral arguments. After considering these arguments and the evidence, the court began its decision by recognizing that "both parents are actually very good parents. They're doing a great job. The child is thriving and doing well."

¶35 The circuit court then considered "probably the largest factor," which was the child's request that she spend "equal time with each parent." *See* WIS. STAT. § 767.41(5)(am)2. The court noted that there was "some limited information" that the daughter might have been manipulated into making the request because the young, six- to seven-year-old daughter apparently suggested a "2/2/3" placement on her own. But the court nonetheless found the daughter's request for equal time to be her "sincere wish."

¶36 Biehl suggests that the child's request regarding placement was "unreliable" and that it could not be used to support the circuit court's decision. Biehl fails to argue, however, that the court's findings regarding the daughter's request, including its sincerity, were clearly erroneous. Even if Biehl had raised that argument, the record contains ample evidence to support the court's findings. Schroeder testified that the parties' daughter said during the custody study that

---

[8] To the extent Biehl argues that the final order failed to comply with WIS. STAT. § 767.41(6) because the circuit court did not explain why modifying physical placement was in the child's best interest, we disagree. The final written order incorporated the transcript of the court's oral decision, which adequately expresses the court's findings and the factors that it relied upon in reaching its decision.

"she wanted to spend equal time with [her] dad," and Schroeder believed the daughter's statements seemed "authentic." Likewise, Hyde testified, "I have never coached her for this. Absolutely not." The court could therefore find, as it did, that the child sincerely wanted to spend equal time with her parents, and it could rely on the child's request when determining her best interest.

¶37 After considering the child's request regarding placement, the circuit court then observed that "each of these households have other children … and she apparently enjoys that as well. So that's a consideration." *See* WIS. STAT. § 767.41(5)(am)3. Although Biehl seems to dismiss this factor as not favoring either party, equal time with each parent gives the parties' daughter an equal opportunity to develop relationships with her siblings in both households. Thus, by modifying placement to equal time, the court was able to provide the child with a better opportunity to further strengthen her relationship with Hyde's son, while still providing her with an adequate opportunity to spend time with Biehl's children.

¶38 The circuit court next considered several factors related to the child's development and adjustment to home and school, her need for regular periods of placement, and each party's support of the other party's relationship with the child. *See* WIS. STAT. § 767.41(5)(am)5.-6., 8., 11. Specifically, the court recognized that the child is eight years old, smart, doing well in school, and "appear[s] to be above average" in her development. In addition, the court noted that "regular and meaningful periods of physical placement" did not seem to be a significant factor because the proposed change involved only one day per week. The court also observed that "there's evidence in this case of both parents being oppositional to each other" and that Hyde had made some negative comments about Biehl.

17

¶39 Although the circuit court did not expressly discuss Schroeder's recommendation from her custody study, that recommendation further supports the court's exercise of discretion because she recommended equal placement with each parent. *See* WIS. STAT. § 767.41(5)(am)15. Biehl suggests that this recommendation could not be relied upon because, in her opinion, Schroeder did not sufficiently explain her recommendation with reference to the factors in § 767.41(5)(am).[9] As a witness, however, Schroeder was not required to explicitly reference each statutory factor in support of her recommendation. Moreover, Schroeder provided an adequate explanation for her recommendation, testifying that equal placement would "maximiz[e] each parent's available time" and that "there were no concerns [about the parents or the proposed placement] that came up" in the custody study.

¶40 In the end, the circuit court determined that Hyde had rebutted the presumption of the status quo and that modification was in the child's best interest. We conclude that the court did not erroneously exercise its discretion in reaching these conclusions because the court applied the correct legal standards set forth in WIS. STAT. §§ 767.41(5)(am) and 767.451(1)(b) and because the court reached a reasonable result under the facts of this case. *See **Keller***, 256 Wis. 2d 401, ¶6.

¶41 Biehl argues in her reply brief that the statutory presumption "exists to decide close cases in favor of the party opposing modification." We disagree.

---

[9] Biehl argues in her brief-in-chief that WIS. STAT. § 767.41(5)(am)15. was not a relevant factor because Schroeder's report was never "admitted into evidence." *See **id.*** Biehl, however, fails to respond to—and therefore concedes—Hyde's argument that Schroeder's testimony about her report was sufficient to meet the "admitted into evidence" requirement of § 767.41(5)(am)15. *See **Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded).

The purpose of the presumption is to protect the best interest of the child, *see Landwehr*, 291 Wis. 2d 49, ¶34 n.13, which sometimes requires maintaining the status quo.  Here, however, the circuit court determined that modification was in the child's best interest based upon the relevant statutory factors and that Hyde had rebutted the presumption of the status quo.  Because these conclusions were reasonable, we must affirm.

> *By the Court.*—Order affirmed.

> Not recommended for publication in the official reports.