# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2024AP395**
**2024AP396**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2022TP74
2022TP75

**IN COURT OF APPEALS**
**DISTRICT I**

APPEAL NO. 2024AP395

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N.R., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

E.S.,

      RESPONDENT-APPELLANT.

**APPEAL NO. 2024AP396**

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO Z.R., A PERSON UNDER THE AGE OF 18:**

**STATE OF WISCONSIN,**

      **PETITIONER-RESPONDENT,**

  **V.**

**E.S.,**

      **RESPONDENT-APPELLANT.**

---

APPEALS from orders of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed*.

¶1 DONALD, P.J.[1] Emily appeals from circuit court orders terminating her parental rights to her children, Nicole and Zachary.[2] Emily argues that the circuit court erroneously exercised its discretion when it determined that the termination of Emily's parental rights was in the best interests of the children. Specifically, Emily argues that there is insufficient evidence to support the circuit court's findings that the children did not have substantial relationships with Emily and that the children were too young to express their wishes. For the following reasons, this court affirms the circuit court's orders.

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, the individuals in this confidential matter are referred to using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g).

**BACKGROUND**

¶2    On April 22, 2022, the State filed petitions to terminate Emily's parental rights to Nicole and Zachary.[3]  The State alleged that Nicole and Zachary were children in need of continuing protection or services pursuant to WIS. STAT. § 48.415(2) and Emily failed to assume parental responsibility pursuant to § 48.415(6).

¶3    The circuit court held a three-day jury trial starting on March 20, 2023.  At trial, Emily, the initial assessment supervisor, a psychologist, the ongoing case managers,[4] and the ongoing case supervisor testified.  Ultimately, the jury found that the State had proven the grounds it had alleged to terminate Emily's parental rights.  The circuit court then granted judgment on the jury's verdicts and found Emily unfit under WIS. STAT. § 48.424(4).

¶4    The circuit court then proceeded to the dispositional phase of the termination of parental rights proceedings.  The circuit court heard testimony from the foster mother for the children, the current ongoing case manager, and Emily.  After reviewing the testimony and evidence, the circuit court concluded that it was in the best interests of Nicole and Zachary to terminate Emily's parental rights.

¶5    In its decision, the circuit court emphasized portions of testimony from the jury trial and dispositional hearing that it felt were particularly important to the disposition.  The circuit court noted how this case started in July of 2020

---

[3] The State also sought to terminate the parental rights of the children's father; however, the father's rights are not at issue in this appeal.

[4] The ongoing case manager who was first assigned this case in September of 2020 and the current case manager, who was assigned this case in January of 2023, testified.

with concerns about Emily's mental health, including anxiety, depression, and anger. The circuit court highlighted the initial assessment supervisor's testimony that when the children were living with Emily they were "filthy" and living in "deplorable" conditions in a house that was ready to be condemned. The circuit court discussed the testimony of the psychologist who did a standard evaluation of Emily and testified that Emily struggled with post traumatic stress disorder that caused symptoms including paranoia and auditory hallucinations.

¶6      The circuit court went on to discuss how both the current ongoing case manager and ongoing case supervisor testified to concerns with Emily's visits with Nicole and Zachary. The circuit court noted that visitations are foundational to determining the disposition. The ongoing case supervisor was concerned with the lack of progress with Emily's visits, the amount of prompting Emily needed from visitation workers, and the number of visits Emily missed. The current ongoing case manager testified that many of these visits were "chaotic" and explained that Emily often became frustrated during visits, yelled at the children, and cried.

¶7      Furthermore, the circuit court discussed how the visitation notes indicated that Emily did not have age appropriate expectations of the children, which was demonstrated by Emily's comments and conversations with the children that they were too young for. For example, Emily would "vent" to Nicole about bills and rent. Additionally, Emily would threaten to cancel visits if the children did not listen to her and stop "making her look bad."

¶8      The circuit court also considered Emily's testimony and found her "for the most part, credible." The circuit court discussed how Emily had lacked the resources to care for herself and the children, and recognized that Emily had

4

recently made progress by getting a job and securing safe housing stocked with food and toys for Nicole and Zachary.

¶9 The circuit court then made findings with respect to each factor in WIS. STAT. § 48.426(3) for each child and found that all of the factors either weighed in favor of termination or were neutral. The circuit court discussed how Nicole and Zachary had been out of Emily's care for about thirty-two months and were very healthy but had some behavioral issues that the foster mother was aware of and has made efforts to remedy. The circuit court found that adoption by the foster mother "[is] as certain as anything can be certain in life[.]" The circuit court considered the children's wishes and found that both Nicole and Zachary were too young to express their wishes. Furthermore, the circuit court looked at Nicole's and Zachary's relationship with Emily and found that these relationships were not substantial ones. Instead, the circuit court characterized Emily's role in her relationships with both children as that of a visitor. Consequently, the circuit court found that there would be no harm in legally severing these relationships.

¶10 Additionally, the circuit court found that the termination of Emily's parental rights would allow Nicole and Zachary to enter into more permanent and stable family relationships. The circuit court discussed how there are many conditions that Emily would have to meet before the children could be returned to her, including addressing her mental health. The circuit court emphasized that uncertainty is never in a child's best interest and it is unclear when and if Emily would be able to address the necessary conditions for the children's return to her custody. The circuit court found that the stability and permanence offered by the foster mother was in the best interests of the children. Ultimately, after considering all of the factors, the circuit court held that termination of Emily's parental rights was in the best interests of Nicole and Zachary.

¶11 Emily now appeals the circuit court's orders.

## DISCUSSION

¶12 Emily's arguments take issue with the second phase of termination of parental rights proceedings, the dispositional phase.[5] At the dispositional phase, the circuit court must consider the evidence and make a record that "reflect[s] adequate consideration of and weight to each factor" in WIS. STAT. § 48.426(3). *State v. Margaret H.*, 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475; *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶29, 255 Wis. 2d 170, 648 N.W.2d 402. These factors include the following:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

---

[5] "[A] contested termination proceeding involves a two-step procedure. The first step is the fact-finding hearing 'to determine whether grounds exist for the termination of parental rights.'" *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402 (citation omitted). "When the fact-finding step has been completed and the court has made a finding of unfitness, the proceeding moves to the second step, the dispositional hearing." *Id.*, ¶28.

Sec. 48.426(3). The primary focus in the dispositional phase is on the best interests of the child. *Julie A.B.*, 255 Wis. 2d 170, ¶28.

¶13 Emily argues the circuit court erroneously exercised its discretion asserting that there was insufficient evidence to support the circuit court's findings on the third and fourth statutory factors enumerated in WIS. STAT. § 48.426(3). Although we only individually address the factors Emily challenges, our independent review of the records confirms that the circuit court adequately considered all of the statutorily required factors. We conclude that the circuit court's findings concerning the children's wishes and the lack of substantial relationships between Emily and both children are sufficiently supported by the records.

¶14 The circuit court exercises its discretion by weighing factors at the dispositional hearing to make its ultimate determination of whether to terminate parental rights. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). Wisconsin law does not "mandate the relative weight" to be placed on any particular factor. *Margaret H.*, 234 Wis. 2d 606, ¶29. "An appellate court will sustain the circuit court's ultimate determination in a proceeding to terminate parental rights if there is a proper exercise of discretion." *Id.*, ¶32.

¶15 "A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198. "We will search the record for reasons to sustain the [circuit] court's exercise

of discretion." *Lofthus v. Lofthus*, 2004 WI App 65, ¶21, 270 Wis. 2d 515, 678 N.W.2d 393.

¶16    Emily argues that there is insufficient evidence supporting the circuit court's finding that Emily's relationships with the children were not substantial ones. *See* WIS. STAT. § 48.426(3)(c). Specifically, the circuit court found that Emily's and the children's relationships were not substantial; instead, their relationships were a "visitation type of a relationship, and that is it." Emily points to her own testimony regarding her relationships with Nicole and Zachary and argues that the circuit court should have relied on her testimony to find that she and the children had substantial relationships. Emily testified that the children called her "mommy," wanted to live with her, that she successfully fought for an extra visitation day, and that she provided for the children's care prior to their removal.

¶17    The circuit court explained, and the records support, that Nicole and Zachary had been out of Emily's care for about thirty-two months and all of the children's daily supervision, care, support, education, and needs were met by the foster mother. The foster mother also testified about her bond with the children and that the children called her "mom."[6]

¶18    Furthermore, Emily's visits with the children never progressed from supervised to unsupervised and Emily also missed and left visits early. Additionally, the current ongoing case manager testified that Emily struggled to manage the children during her supervised visits. The circuit court highlighted the

---

[6] The circuit court found the foster mother's testimony "very, very credible" and acknowledged that the children call both Emily and the foster mother "mom."

current ongoing case manager's testimony describing Emily's visits with Nicole and Zachary as "chaotic," and that Emily and the children would often get frustrated. For instance, the circuit court noted one visit in particular "where things got out of control. The kids were crying, [and] [Nicole] was hiding behind a chair." Similarly, the foster mother testified that Nicole and Zachary exhibited increased behavioral issues after visits with Emily.

¶19 Emily concedes that the current ongoing case manager's "testimony provided some evidence that [Nicole] and [Zachary] did not have [a] significant emotional bond with [Emily]." However, Emily contends that the case manager's testimony is inadequate in light of Emily's testimony supporting the contrary finding because the case manager had only been working on this case for about three months.

¶20 Emily's contention with the case manager's testimony requires this court to judge the case manager's credibility and weigh her testimony against Emily's. This court does not review the weight of testimony and credibility of witnesses. *Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980). "[T]he trial judge, when acting as the factfinder, is considered the 'ultimate arbiter of the credibility of a witness,' and [their] finding in that respect will not be questioned unless based upon caprice, an abuse of discretion, or an error of law." *Id.* at 152 (quoting *Posnanski v. City of West Allis*, 61 Wis. 2d 461, 465, 213 N.W.2d 51 (1973)).

¶21 The circuit court was clear that it found the current ongoing case manager "very credible" and Emily "for the most part, credible." Furthermore, the circuit court recognized that the current ongoing case manager had "only been on the case for three months, and a lot of her information necessarily comes from the

case notes." Emily does not argue that the circuit court's credibility findings were based upon caprice, an abuse of discretion, or an error of law, so we will defer to the circuit court's determinations. *See Johnson*, 95 Wis. 2d at 151-52 ("[D]eference to the [circuit] court's determination of the credibility of witnesses is justified … because of the superior opportunity of the [circuit] court to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony." (Quotation omitted.)). Ultimately, when taking the ongoing case manager's testimony into account, there is sufficient evidence to support the circuit court's finding that Emily and the children did not have substantial relationships.

¶22 Emily also argues that the circuit court did not consider the harm to be caused to Nicole and Zachary by the severance of their legal relationships with Emily. "Under [WIS. STAT. § 48.426(3)(c)], the circuit court must evaluate the existence of 'substantial relationships' between a child and the child's family, and then gauge whether the child will suffer harm from a severance of those relationships." *Margaret H.*, 234 Wis. 2d 606, ¶16.

¶23 After reviewing the records, it is clear that the circuit court considered whether Nicole and Zachary would suffer harm caused by severance of the children's legal relationship with Emily. The circuit court laid out its reasoning for why Emily and the children did not have substantial relationships and instead had "visitation type" relationships. The circuit court then considered the foster mother's testimony that, if she adopted Nicole and Zachary, she would try to keep Emily in the children's lives by continuing visits and going on family outings. *See id.*, ¶29 ("In its discretion, the [circuit] court may afford due weight to an adoptive parent's stated intent to continue visitation with family members."). Ultimately, the circuit court found that "it would not be harmful to the children to sever these relationships." Therefore, we conclude that the circuit court

adequately considered this factor by gauging whether the children would suffer harm from the legal severance of their relationship with Emily.

¶24    Finally, Emily argues that the circuit court's finding that both children were too young to meaningfully express their wishes was insufficiently supported by the evidence because Emily's own testimony that both children expressed a desire to come live with her was "uncontroverted."

¶25    There is no bright-line rule that governs what age a child is able to understand termination of parental rights proceedings and meaningfully convey their wishes regarding whether they would rather be adopted or live with their biological parents.  Nicole and Zachary were both young, five years old and three years old respectively, at the time of the dispositional hearings.  Notably, the current ongoing case manager testified that neither of the children were old enough to understand adoption and viewed their home as their current placement with their foster parents.  The circuit court found the current ongoing case manager's testimony "very credible."  This evidence is sufficient to support the circuit court's finding that Nicole and Zachary were too young to express their wishes.

## CONCLUSION

¶26    After reviewing the records, it is clear that the circuit court did not erroneously exercise its discretion when it determined that terminating Emily's parental rights was in Nicole's and Zachary's best interests.  The circuit court examined the relevant facts, applied the proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.  *See* ***Mable K.***, 346 Wis. 2d 396, ¶39.  Accordingly, we affirm.

11

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

12